[Crim. No. 1470. In Bank.—June 4, 1909.]

THE PEOPLE, Respondent, v. A. C. DERWAE, Appellant.

CRIMINAL LAW—BURGLARY—SUPPORT OF VERDICT—PREJUDICIAL MISCON-
DUCT OF PROSECUTING ATTORNEY.—*Held*, that though the evidence
was sufficient, upon trial of the appellant for burglary, to support
the verdict of guilty of an attempt to commit burglary in the first
degree, the evidence was not so strong that it cannot be said that
the jury were not prejudicially misled by the persistent misconduct
of the prosecuting attorney in intimating that the defendant, who
had produced evidence of good character from his home town in Wis-
consin, should have brought the chief of police of that town as a wit-
ness; and in asking if he had not been guilty of a disgraceful offense
with one of his daughters, after the court had ruled that his family
relations were not to be considered, and in persisting, after an
objection was sustained for misconduct in asking such question, to
ask further if defendant knew the chief of police of another town
in which he had lived.

ID.—MISCONDUCT OF PROSECUTING ATTORNEY, WHEN GROUND FOR RE-
VERSAL.—Though the courts have exhibited a strong disinclination to
set convictions aside upon the ground of misconduct of the prose-
cuting attorney, yet such misconduct is ground for reversal, when it
was such as would naturally prejudice the jurors against the de-
fendant, and it cannot be said with certainty that such misconduct
was not the turning point in the case to secure a conviction.

ID.—EFFECT OF REBUKES ON MISCONDUCT.—Where the misconduct is such
as may have procured the verdict, and rebukes do not seem to have
any effect upon the prosecuting officer, and probably as little on the
jury, the only way to secure a fair trial is to set a verdict so pro-
cured aside.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. W. B. Nutter, Judge.

The facts are stated in the opinion of the court.

George H. Buck, for Appellant.

U. S. Webb, Attorney-General, George Beebe, Deputy Attorney-General, and J. Charles Jones, for Respondent.

MELVIN, J.—As we are in accord with the decision of the district court of appeal upon all but one subject presented by the record in this case, it will be necessary to consider only the matter of the alleged misconduct of the assistant district attorney who conducted the case on behalf of the people.

The appellant was charged with the crime of burglary and was convicted of an "attempt to commit burglary in the first degree." The evidence was largely circumstantial, but the defendant, who took the stand in his own behalf at the trial, did not deny any of the essential physical facts put in evidence by the prosecution. He did, however, have an explanation of his conduct which, although it evidently was not believed by the jury, cannot be characterized as intrinsically improbable.

The defendant owned in the city of Stockton a building which was occupied in part by a grocery store. At the back part of the store was a door opening into a portion of the building which was occupied by defendant and his family as a residence. Over this door was a transom large enough to admit the passage of a man. The grocers had, from time to time, missed articles from the store, and on Sunday, the twentieth day of September, 1907, they determined to make an effort to catch the thief. The store was closed at eleven o'clock in the morning, according to custom; and on that evening one of the proprietors of the grocery store and a companion entered the place and secreted themselves. When they went into the store they noticed that the transom was open and that there was a ladder inside reaching from the floor to the opening above the back door. From their hiding place the two men saw the defendant several times looking through the transom. Finally he reached inside for the ladder and began to pull it

CLV Cal.—38

upwards.  At this juncture the witnesses sprang from their place of concealment; pulled the ladder from the grasp of defendant; and telephoned for the police.  When the ladder was seized, Mr. Pezze called the defendant an uncomplimentary name and said:  "I have been feeding you for the last five years; now is time to stop you."  Defendant replied:  "Boys I want you to keep your cat out of the way from here, the cat has been bothering me and making so much racket."  It was shown that the cat was in the store at the time and had been making some noise.  There was evidence also that defendant offered to pay for anything which might be missing from the store and that he endeavored to settle the matter with the owners.  On this particular Sunday nothing was missed from the stock of the grocers.  Defendant testified that he had been attracted to the store at the time he was discovered by sounds which he feared were made by burglars.  He also stated that the ladder had been lowered into the store by him and his wife for the purpose of providing for the escape of the cat.

It was shown that the defendant was a man of means; and that he had recently bought articles of the kind which had been missing from the grocery store.

A number of residents of his old home in Wisconsin testified, by deposition, to his good general reputation for truth, honesty, and integrity.

From the essential facts thus briefly stated, it will be seen that, while there was ample evidence to justify the verdict of the jury, this was not a case in which the evidence was so strong that a conviction would almost necessarily be secured, whether the prosecuting officer indulged in misconduct or not.  The explanation of his demeanor and acts which the defendant offered was not an unreasonable one.  There were certain admitted facts tending in some slight degree to sustain it.  Of course, the jury, having an opportunity to observe the defendant's bearing and manner of testifying, could better weigh his testimony than we can.  Ordinarily, we would say that their determination with reference to the truth or falsity of his statements was absolutely final and not reviewable; but if the conduct of the assistant district attorney was such as would naturally prejudice the jurors against the defendant, who can say that such conduct was not the turning point in the case— that it and it alone did not cause the jurors to repudiate and

cast aside testimony which otherwise might have availed to acquit the defendant?

The prosecutor opened his examination of the defendant by bringing out the fact that the latter was a divorced man when he contracted his second marriage. Then the assistant district attorney inquired whether or not the witness knew the chief of police of Green Bay, Wisconsin. An affirmative reply having been given, the witness was then asked why he had not taken the deposition of the chief of police upon the issue of good character. Defendant's objection to this question was sustained. The avowed purpose of the inquiry was to show that defendant had not selected men of the standing of the chief of police as his sponsors in that community. Why the chief of police was mentioned by the prosecutor rather than the postmaster (whose deposition was read later) or any other supposedly prominent person, does not appear; but in view of what followed almost immediately, it seems more than probable that the jurors discerned some peculiar significance in this reference to the chief of police, because the prosecuting officer, in the face of the court's ruling, improperly insinuated that, while a resident of Green Bay, the defendant had been guilty of a horrible and unnatural crime committed with his own daughter. As soon as the court sustained the objection to the question with reference to defendant's failure to take the deposition of the chief of police of Green Bay, Wisconsin, the assistant district attorney proceeded with the examination as follows:—

"Q. How many children did you have?

"A. Eleven.

"Q. You had a daughter once, didn't you, a daughter among those children?

"A. I did; I got six.

"Q. Did you have any trouble with one of your daughters while you were at Green Bay, Wisconsin?

"A. Not that I know of.

"Mr. Buck: Object to that as incompetent, irrelevant and immaterial.

"The Court: Objection sustained. I don't think the family relations of this man are material at all in this case.

"Mr. Rendon: Q. Did you have such relations, or attempted relations, with your daughter that are unnatural with a parent?

"Mr. Buck: One moment. We object to that as incompetent, irrelevant and immaterial, and assign it as misconduct on the part of the district attorney.

"The Court: Objection sustained. And, gentlemen, that objection was sustained and the court suggested to counsel that the family ties of this man, his children, who they are or where they live are immaterial in this case, and the court now instructs you that when you come to decide this case you are to consider only the evidence which has been admitted by the court in the case and allowed to stand, and you are not to consider as evidence any questions asked by counsel upon either side, but you are to consider only the evidence in the case which has been permitted to stand as evidence. And side remarks of counsel, or questions asked by counsel upon either side are not evidence, and you are not to be influenced thereby or governed in any way by any question they may ask, and the court hereby charges you that is one of the duties of the jurors."

The highest commendation should be accorded the learned judge who presided at the trial for the promptness with which he rebuked the improper conduct on the part of the prosecuting officer and the efforts which he made to eliminate from the minds of the jurors the ill effects of the prosecutor's sinister suggestion. That official, however, almost immediately after the court's ruling and admonition to the jury, proceeded to interrogate the defendant with reference to the latter's acquaintance with the chief of police of Depere, Wisconsin, where the defendant had once resided.

Courts have exhibited a strong disinclination to set aside convictions upon the ground of misconduct of district attorneys. This is eminently proper. The state should not be put to the expense and its officers to the trouble of a new trial unless it clearly appears that the rights of a defendant have been invaded and a fair trial has been denied him because of the behavior of the prosecuting officer. But we cannot see how the highly improper conduct here revealed could fail to make its impression upon the minds of the jurors to the prejudice of defendant's rights. After persistently suggesting that for some reason defendant did not want the opinion of the chief of police of Green Bay, his former home, upon the subject of his general reputation for the moral qualities involved in the

prosecution, the representative of the state of California asked this man on trial for his liberty, not if he had committed a similar crime to that for which he was being tried, not if he had been guilty of an ordinary offense (and such questions would have been very improper), but if he had not committed or attempted one of the most disgusting and atrocious crimes known. This was done after the court had ruled that the family relations of this man had nothing to do with the case on trial, and was followed by inquiries regarding the acquaintance of witness with another chief of police. It may be that the assistant district attorney showed no heat or malice in his manner, and that the jurors made no demonstration indicating that their passions were aroused against the defendant, but we cannot see how, in spite of the prosecutor's suavity, the apparent imperturbability of the jurors, and the court's prompt declaration of the law, such gross misconduct could fail to make its impression. In the case of *People* v. *Valliere,* 127 Cal. 65, [59 Pac 295], where the court had promptly rebuked misconduct not more serious than that displayed by this record, the court said: "Rebukes do not seem to have any effect upon prosecuting officers, and probably as little on juries. The only way to secure fair trials is to set verdicts so procured aside." (See, also, *Spencer* v. *Commonwealth* (Ky.), 107 S. W. 342.)

The judgment and order are reversed.

Henshaw, J., Sloss, J., Lorigan, J., and Beatty, C. J., concurred.

ANGELLOTTI, J., dissenting.—I dissent. Assuming the fact of misconduct on the part of the district attorney, the only material question is whether such misconduct may have influenced the jury against the defendant in determining the question of his guilt or innocence. If it could not have done so under any reasonable hypothesis, the judgment should not be reversed, for a judgment should not be reversed on account of an erroneous ruling or misconduct not affecting the substantial rights of the defendant.

The claim that the particular misconduct alleged may have operated against the defendant is based wholly, of course, on the idea that it was an intimation by the district attorney that

defendant at a time many years previously had or attempted to have unnatural relations with one of his daughters. But so assuming, such intimation was not evidence, and the jury were clearly and unequivocally instructed that it was not evidence and should not be considered by them for any purpose. Nothing could have been clearer or more positive as to the duty of the jurors with regard to this question of the district attorney than the instruction of the trial court quoted in the opinion of this court, which was given immediately upon the asking of the improper question. There is no warrant in the record for the assumption that any of the jurors may not have been able to absolutely disregard the question of the district attorney and any intimation contained therein, and it must be assumed, of course, that they obeyed, so far as they were able to do so, the instruction of the court. To imply otherwise would be to assume that they were either incompetent to discharge their duties, or were wilfully disregardful of the oath they had taken.

SHAW, J., dissenting.—I agree with the dissenting opinion of Justice Angellotti. There is positively nothing in the record, which is fully stated in the prevailing opinion, to indicate that, in asking the questions assigned as misconduct, the district attorney was acting in bad faith expecting to have the question excluded and intending to instill suspicion into the minds of the jury by the inference which he hoped they would draw from the fact of his putting the question. There is nothing to show that he did not believe that the questions were proper and that the fact sought to be elicited was material and relevant. We have, therefore, nothing more serious in the way of injurious misconduct than the fact that the district attorney put a question to the defendant, first in a form so general that it did not suggest anything more than a possible dispute with his daughter over some trivial matter, and then in more specific form pointing to possible incest, an immediate objection thereto and a ruling by the court excluding the testimony. In civil cases such ruling alone is usually regarded as sufficient to inform the jury that they are not to consider the matter at all in deciding the case, and it is not customary to specifically instruct the jury to that effect, unless evidence has been actually given in response to the question. But here the court went further and told the jury, clearly and posi-

tively, that the matter inquired about was not evidence and that they must not allow it to influence their decision. The rule announced amounts to this, that in seeking to elicit evidence by questions, and in deciding, as he often must, on the instant and in the necessary hurry and confusion of a trial, as to the relevancy of possible evidence that may be suggested to his mind at the moment, the district attorney must be infallible in his judgment and that if he makes a mistake, it is at the risk of committing an error beyond the power of the trial court to cure, an error which, *ipso facto,* makes further proceedings in the trial useless and which will constitute a sure cause for a reversal on appeal. It seems to me that the doctrine necessarily assumes that jurors are inherently incapable of performing their duties and observing their oath and that instead of it being necessary for it to appear that the misconduct did affect the decision, it is to be in all cases presumed that it did so. While the line cannot be drawn and the rule cannot be stated so as to show precisely the gravity of the misconduct which will justify or require a reversal, it is my opinion that that shown in the present case falls far within the class which should be passed over by the appellate courts as non-prejudicial error.