# STATE v. MARK B. TALCOTT.[1]

December 6, 1929.

No. 27,470.

*Arthur LeSueur,* for appellant.

*G. A. Youngquist,* Attorney General, *James E. Markham,* Deputy Attorney General, *Floyd B. Olson,* County Attorney, and *S. Paul Skahen,* Assistant County Attorney, for the state.

[1]Reported in 227 N. W. 893.

Wilson, C. J.

Defendant appealed from a judgment of conviction and from an order denying his motion for a new trial.

He stands convicted of grand larceny in the first degree based upon alleged fraudulent representations in connection with the sale of a $1,600 real estate mortgage to one Curry. The misrepresentations related to the location of the mortgaged lands, their character, value, use, etc. The proof does not go to the financial standing of the maker of the note in relation to his ability to pay or the collectibility of the note at its maturity.

■ Under G. S. 1923 (2 Mason, 1927) § 10358, a person is guilty of larceny if, with intent to deprive or defraud the true owner of his property, he obtains it from the possession of the owner by fraudulent or false representations or pretense. The jury found that defendant had so procured money from Curry. The verdict is challenged because there is no proof that the maker of the note is not financially responsible.

True, the general rule is that such a crime is not committed unless the wronged party is in fact defrauded, that is, unless he has suffered a pecuniary loss. Such statutes are not aimed at fraud that does no harm. When the wronged party gets what he bargained for no crime is committed. Here he did not. We have held that one may be liable for such fraud in a civil action regardless of the solvency of the maker of the note. Nilsen v. Farmers State Bank, 173 Minn. 174, 216 N. W. 943. These representations were material. They were controlling. They were made for the purpose which they accomplished. The purpose of the statute is to extirpate such conduct and to protect against imposition. Guilt should not be made to depend under such circumstances as here disclosed upon the uncertainty of the determination of the question whether any pecuniary loss in the distant future will be actually suffered. Curry was induced by the fraudulent representations to part with his money. It is no defense to say that he may eventually save himself and collect by some method or manner not then contemplated. The crime was complete when by means of the misrepresentations the

fraud thereby intended was consummated by the obtaining of the money sought. People v. Bryant, 119 Cal. 595, 51 P. 960; Commonwealth v. Coe, 115 Mass. 481, 502; People v. Tufts, 167 Cal. 266, 139 P. 78; People v. Cook, 41 Hun, 67; Commonwealth v. Ferguson, 135 Ky. 32, 121 S. W. 967, 21 Ann. Cas. 434, 24 L.R.A.(N.S.) 1101, and note. It cannot be said that Curry was not prejudiced by these fraudulent representations. Nilsen v. Farmers State Bank; 173 Minn. 174, 216 N. W. 943. That should be sufficient to constitute the crime, 11 R. C. L. 843, § 25, when the intent to defraud is present. The false representation is not of itself criminal. It becomes so only when accompanied by a fraudulent intent, which is the substance of the crime, coupled with a material deception that causes the wronged party to get something for his money other than contemplated. Under such circumstances there is an actual defrauding.

■ Defendant asks for a new trial on the claim that vital testimony was given in the jury room that had not been used in court. He offered the affidavit of three jurors, who claim that in the jury room the foreman of that body said this:

"The defendant had been indicted by the grand jury; that he had been before them and had a full opportunity to tell his whole case; that the grand jury would not have indicted him unless there was something to it, or it would not have come this far."

Upon motion of the state these affidavits were stricken. This was proper since they related to what transpired in the jury room. 5 Dunnell, Minn. Dig. (2 ed.) § 7109.

■ Counsel for defendant also presented his own affidavit in which he stated that he had talked with four of the jurors, three of whom made the affidavits above mentioned, and stated on information that the bailiff was requested to ask the trial judge whether a recommendation for leniency might be added to the verdict and the bailiff reported back but the report was not heard by the affiant's informers. The affidavit also stated that he had been told that as the jury was leaving the court room a member of the jury, who was later its foreman, said to state's counsel, "I hope you get a con-

viction in this case; there is too much—," to which it is said the state's attorney made no reply. The portion of this affidavit covering these matters was stricken. In so far as the affidavit relates to what occurred in the jury room, it was inadmissible and was properly stricken. Aldrich v. Wetmore, 52 Minn. 164, 53 N. W. 1072; 5 Dunnell, Minn. Dig. (2 ed.) § 7109. In so far as it related to what happened in the court room it was hearsay; but in any event it was not of such character as to call for a new trial.

The unstricken portion of counsel's affidavit discloses that the verdict was returned at 10:30 p. m. That the court, in the absence of a clerk or deputy, received the verdict, read it to the jury, and asked in the usual way if it was their verdict. That the jury was then discharged before the verdict was recorded, which was done on the following day. It is also stated that the court did not read a portion of the verdict relating to leniency.

The record does not disclose that the verdict contained any reference to leniency. But the claim that failure to read to the jury the verdict as recorded vitiates the verdict cannot be sustained. We have held to the contrary. State v. Levy, 24 Minn. 362. It is good practice to follow the statute and to have the clerk present when a verdict is received. But such an unprejudicial irregularity cannot require a new trial.

Affirmed.