[Crim. No. 3536. Second Dist., Div. One. June 2, 1942.]

THE PEOPLE, Respondent, v. EDWARD KNOTT et al., Appellants.

Morris Lavine for Appellants.

Earl Warren, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Respondent.

DRAPEAU, J. pro tem.—On June 16, 1941, in the halcyon days before our entry into the second World War, a truck driver left his truck, loaded with automobile tires and tubes, parked on the street while he went into a drug store. When he came out, the truck, tires and tubes were gone. So far as the driver is concerned, he disappears from this case because that was the first and the last day that he worked for the corporation which owned the truck. The truck was found next day with no tires or tubes in it, and with all of the distinctive lettering on it painted out.

A few days after the disappearance of the tires, the defendant Knott rented a garage at the rear of a private home and stated that he wanted it for a place in which to store tires. After the garage was rented, the defendants Knott and Chaus were seen several times backing a Chevrolet car into it. After they were arrested, officers who searched the garage found empty cartons for tubes, which were identified as having been in the truck with tubes in them on the day it disappeared.

The defendant Knott sold for less than market prices a number of tires and tubes to different individuals, which

tires and tubes were identified at the trial as having been part of the truck load which disappeared.

The defendant Chaus endeavored to sell some tires and tubes to a dealer who turned him down because Chaus told him they were "hot."

Upon being arrested Knott first said he did not know where the tires and tubes came from, then that he had bought them from a man by the name of Burk, and then that he got them from the defendant Chaus; also that he had given Chaus $40 which he had received in payment for some of the tires and tubes which he sold. These tires and tubes were likewise identified as being part of the truck load in question.

Upon the conclusion of the People's case neither defendant took the stand. The jury convicted them both of the crime of receiving stolen property, and they were sentenced to San Quentin. Motions for new trial were made and denied, and both defendants have appealed.

From the recital of facts just given, it is evident that there was ample evidence against the defendants to sustain the verdict of the jury.

Appellant Chaus contends that the evidence against him is not as strong as that against Knott. The circumstances that he was seen in a car backing into the garage several times, that he tried to sell tires and tubes which he described as "hot", and that he received $40 from Knott from the sale of the stolen tires, are sufficient to support the verdict of the jury as against him.

There are some claimed errors of law which require comment:

One particularly stressed on this appeal is that the declaration against interest by the defendant Chaus relative to "hot" tires cannot be evidence against him because the word "hot" does not indicate that property to which it refers is stolen property. The English language is a living, growing, changing thing. Meanings of words change. Sometimes meanings change slowly with lapse of time; sometimes almost over night. Many words are susceptible of different meanings depending upon the context of the sentence in which they are used. The word "hot" may be used to express several very different things. For instance, we speak of a hot water bottle, or of hot weather, or a hot time, or hot air (with at least two very different meanings), or a hot tamale, or hot cargo (with a

comparatively new meaning), or even of the lowly hot dog. Without further excursion into the realm of semantics, it may now be said that within the last few years the word "hot" when used as an adjective to modify a noun whose referent is an article of personal property may mean that that article has been stolen, that somebody is looking for it and that it is dangerous to have it in one's possession. The dictionary has already caught up with this meaning of the word. In Webster's Collegiate Dictionary (5th ed., 1942) is to be found the following in defining the adjective "hot": "recently stolen or otherwise illegally obtained, as 'hot' goods or bonds." The word "hot" in the sense it was used in the declaration of the defendant Chaus conveyed the meaning that the tires were stolen and that he knew it. (*People* v. *Morris,* 124 Cal. App. 402 [12 P. (2d) 679].)

■ Appellants assert that there was error in parading before the jury a whole truck load of tires and tubes. This is untenable because at least part of them was identified as having been in the stolen truck.

■ Errors in rulings upon admission of evidence are claimed, principally because evidence against one defendant was received as against the other. This testimony was admitted upon the theory that the two defendants were engaged in a joint enterprise. From the reference already made to it, it is apparent that there was sufficient testimony to sustain the theory of the prosecution that both defendants were engaged in a joint enterprise. That being true, evidence of the conduct, acts, and declarations of one defendant was properly received as against the other.

■ Misconduct of the district attorney as against the defendant Chaus is claimed because one of the arresting officers testified that after his arrest he was asked what his wife's name was and with whom he was then living, to which the defendant responded, "What difference does it make?" There is no doubt that whomever the defendant may have been living with had nothing to do with the crime for which he was being tried. Inquiry along that line persisted in could result in misconduct on the part of the district attorney. (*People* v. *Anthony,* 185 Cal. 152 [196 Pac. 47]; *People* v. *Tufts,* 167 Cal. 266 [139 Pac. 78]; *People* v. *Derwae,* 155 Cal. 592 [102 Pac. 266].) But in the present case the occurrence referred to did not go so far as to prejudice the defendant.

Finally we come to complained-of instructions given and

refused by the trial court, complaints based mainly upon the defendants' theory that there was no joint enterprise on the part of both defendants. The instructions complained of were properly given. A reading of the instructions as a whole demonstrates that the jury was fully and fairly advised as to the law applicable both to the case of the People and of the defendants.

The judgment as to both defendants is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied June 16, 1942, and appellants' petition for a hearing by the Supreme Court was denied June 29, 1942.