[Crim. No. 540.   Second Appellate District.—April 26, 1917.]

THE PEOPLE, Respondent, v. REHINO LOPEZ, Appellant.

EVIDENCE—CHILD WITNESS—DETERMINATION AS TO COMPETENCY—DIS-CRETION—APPEAL.—In determining the competency of a child under the age of ten years to be a witness, the trial court has a discretion which seldom will be interfered with on appeal.

ID.—RAPE—EVIDENCE—COMPLAINT TO THIRD PERSON.—In a prosecution for the crime of rape committed by a father with his seventeen-year old daughter, a witness may testify that the prosecutrix complained of the act to him, but not the detail of it, regardless of the fact that she was under the age of consent.

ID.—NATURE OF CHARGE—FACILITY TO INVENT—INSTRUCTION.—In a prosecution for rape, the defendant is not prejudiced by the refusal to give an instruction warning the jury as to the danger of prosecutions for rape being used to satisfy malice or private vengeance, and declaring that in such cases the accused is almost defenseless, in view of the facility with which such charges may be invented and maintained, where the jury was fully and carefully instructed on reasonable doubt.

APPEAL from a judgment of the Superior Court of San Bernardino County.   J. W. Curtis, Judge.

The facts are stated in the opinion of the court.

Albert D. Trujillo, and Ralph E. Swing, for Appellant.

U. S. Webb, Attorney-General, and Robert M. Clarke, Deputy Attorney-General, for Respondent.

JAMES, J.—Defendant was convicted of the crime of rape. The crime charged was alleged in the information to have been committed with a daughter of the defendant, aged seventeen years. By the judgment of the court defendant is required to serve a term of twenty-five years' imprisonment. The appeal is from the judgment.

Counsel for appellant very correctly say that there was very little evidence, aside from that given by the prosecutrix herself, to be looked to in support of the conviction. However that may be, the only function this court is permitted to exercise is to determine whether there is any substantial evidence in support of the verdict, and whether errors appear by which the defendant was prejudiced in his right to a fair trial. It appears that in about June, 1916, defendant went to reside at Chino, in the county of San Bernardino, with his five children, three girls and two boys, the prosecutrix being the oldest of the girls. Defendant and his wife prior to that time had separated, and the former had the care and custody of the children whom, it appears, he in a general way was educating and reasonably providing for. Lizzie Lopez, the complainant, testified that the house in which they lived at Chino contained four rooms; that her father and her sister Jennie slept in one bed in one of the rooms, and that she and her young sister Ida, aged nine, occupied a couch in another room. She testified that her father commenced to pay visits to her bed shortly after the family moved to Chino, and that this continued, once or twice a month, up to September of the same year, at about which time defendant was arrested and charged with the crime of rape. Lizzie testified that she would be asleep when her father came and that she did not cry out, but attempted at different times to awaken her sister Ida by "pinching" the latter; that Ida was never awakened so as to observe the father in his unlawful act. She also testified that finally she had gone to the witness Dillon and complained to him of her father's conduct. On cross-examination she was asked as to whether she complained to anybody else, and she replied that she had told other people, among them

a young man named Cisneros; that she had written him a letter and told him about it. Referring to the times when the defendant would visit her, she said that on those occasions she would be asleep. The following questions were asked and these answers given in that connection:

"Q. And did you know what was going on? A. I knew afterward.

"Q. You didn't know at the time though? A. Yes, sir, I knew, but after it had all happened.

"Q. You didn't say anything when it was happening, did you? A. Yes, sir.

"Q. Who did you say it to? A. To him.

"Q. Well, did you say anything to your sister? A. I tried to wake her up, but I never succeeded.

"Q. Never succeeded at any of these times? A. No, sir.

"Q. Would you try each time to wake her? A. Yes, sir.

"Q. What would you do, get hold of her and shake her? A. I pinched her.

"Q. You never woke her up at any time? A. No, sir."

The theory of the defense as developed by the testimony, was that the young man Cisneros had been in the habit of calling upon the complainant during her father's absence and that the father objected to this, and both remonstrated with the daughter and administered corporal punishment because of the visits of the young man. One of the sons, a brother of complainant, testified that upon returning home he had frequently found his sister closeted with Cisneros; that at times the doors leading to the apartment where they were were fastened; that he had peered through a window and observed the two lying together upon a couch in a position which, according to the descriptive terms used by the witness, was a compromising one. In substance the same testimony was given by the defendant, who denied ever having had intercourse with his daughter. The mother of Lizzie Lopez, being called as a witness, gave testimony indicating that in her opinion the girl was not of truthful mind. On the other hand, several witnesses, apparently reputable people who had resided in the same community with the defendant prior to his moving to Chino, testified that they knew appellant's general reputation for honesty and integrity, and that such reputation was bad. There was some testimony from which the jury might have inferred that children of the defendant who

gave testimony favorable to him had been coached by an aunt and instructed what to say, although this was denied both by these witnesses and the aunt referred to. The girl Ida was the young daughter who, according to complainant's testimony, at all times occupied her bed with her. This young girl was called to the witness-stand by the defendant, but the court indicated that he did not consider that she was competent to testify. We quote in full the examination of this witness and the remarks of the court:

"The Court: What is your name? A. Ida Lopez.

"Q. How old are you, Ida? A. Nine.

"Q. Do you go to school? A. Yes, sir.

"Q. What grade are you in? A. Third.

"Q. Where do you live? A. In Juvenile.

"Q. Do you know what it is to testify in court? Do you know what it is to hold up your hand? A. Yes, sir.

"Q. What do they do that for? A. To tell the truth.

"Q. If you do that, and don't tell the truth, what do they do to you? A. Put you in jail.

"Q. Anything else? Have you ever been a witness in court before? A. No, sir.

"The Court: I think this witness is too young to understand the nature of an oath that she takes, or the testimony that she gives.

"Mr. Swing (Counsel for Defendant): Very well then."

Counsel for appellant insist that the court committed prejudicial error in refusing to allow the young girl to testify in the case. If we were permitted to judge of the competency of this witness from the printed record before us, we would perhaps find it difficult to say that she was not possessed of sufficient mentality and understanding to entitle her to testify. However, in matters of this kind the court has the duty in the exercise of sound discretion to determine that question, and it would be a rare case indeed where such determination would be interfered with upon appeal. (*People* v. *Craig*, 111 Cal. 460, [44 Pac. 186].) In this case we cannot say that the court, from his observation of the young girl as she appeared upon the witness-stand, and the manner in which she gave her answers, did not properly determine that the child was too young to testify understandingly and with full appreciation of the obligation of a witness' oath. It may be further observed that counsel for appellant appear to have acqui-

esced, without objection, in the court's suggestion, and made no request to be allowed to further examine the witness to test her competency.

It is next complained that the court erred in permitting the witness Dillon to relate the substance of a conversation that he had with the complaining witness prior to the arrest of the defendant. This testimony was to show the fact that the complainant did complain about the conduct of the defendant, under the rule which permits such complaints to be offered in corroboration of the charge of the prosecutrix and to show want of consent. (*People* v. *Wilmot*, 139 Cal. 103, [72 Pac. 838].) The question of the consent of the prosecutrix on account of her youth becomes immaterial in this case, but, it is said in the case of *People* v. *Wilmot, supra,* the fact of "complaint of injury on the part of one under the age of legal consent would in most cases be competent, and this court has in this respect made no distinction between cases where there was actual resistance and those where resistance and nonconsent were conclusively inferred by the law." We fail to find in the testimony given by appellant any such recitation of forbidden details as would make it appear that the admission of that testimony constituted prejudicial error. The court cautioned the witness that he could only tell what the "complaint" was, and not the detail of it, and the witness replied that she came to his office, in the middle of September, crying, and said: "I don't want to live with my father." The court then struck out this statement and instructed the jury to disregard it, and the witness was asked again as to what complaint was made and replied, "that she had had sexual intercourse with her father." Undoubtedly it was competent for the witness to tell what complainant complained about—that is, what the subject of her complaint was—and whether he phrased it as that she complained of a rape, or that she said, as he stated, that she had had sexual intercourse with the defendant is not material. The one would mean no more than the other. The defendant, on cross-examination, was not content with the statement of the complainant of the fact of the complaint made to Dillon, but asked her directly, as we have before mentioned, as to other persons she had complained to. It was proper for the district attorney to follow this examination and bring out more fully the matter of other complaints, if any were indicated to

have been made. No prejudicial misconduct can be charged to the prosecuting officer.

Complaint is made because the court refused to give certain instructions offered by the defendant. Instruction No. 9 was to advise the jury that if "the defendant [prosecutrix is evidently intended] made no outcry at the time of the alleged offense and did not immediately complain to others and that when she did complain she had some motive other than the prosecution of the defendant for the alleged offense, it is your duty to take all of these things into consideration in arriving at a verdict and unless and in spite of these facts, you are convinced to a moral certainty and beyond a reasonable doubt that the defendant did commit the alleged offense, you should return a verdict of not guilty." This instruction cannot be said to be clearly phrased, and there was no error in refusing it. The prosecuting witness was under age, and the matter of her consent or nonconsent was not material, and the defendant might well have been convicted without any evidence at all being offered as to any complaint or outcry being made by her. Instruction No. 11, offered and refused, was merely argumentative, and the defendant as a matter of right was not entitled to have it read to the jury. As to instruction No. 12, the same observation may be made; and the same may be said of instruction No. 15. Instruction No. 17, which was to advise the jury that if they believed the testimony of the prosecuting witness was inherently improbable or "possibly untrue," it was their duty to find a verdict of not guilty, in so far as it contained suggestion of pertinent instruction, was completely covered in the instruction on reasonable doubt and other instructions given by the court. Instruction No. 18, offered and refused, was an instruction warning the jury as to the danger of prosecutions for rape being used to satisfy malice or private vengeance, and proceeded to declare that in such case "the accused is almost defenseless, in view of the facility with which charges of this character may be invented and maintained." We do not consider that the refusal to give this instruction amounted to prejudicial error. It may be observed that the court very fully and carefully instructed the jury as to the necessity that it should find in fact the truth of the charge to be beyond a reasonable doubt, and that the testimony of the prosecutrix should be carefully scanned; that neither the gravity of the charge nor the fact that the

defendant was the father of the prosecuting witness was to bias the judgment of the jurors in any manner, and that he was presumed to be innocent until his guilt had been established beyond a reasonable doubt. The defendant was allowed to show very fully the alleged conduct of the prosecutrix with the young man Cisneros, in the furtherance of his contention that the prosecution arose through the ill will of the complainant because of his interference with and objections to the visits of Cisneros. As we have before stated by way of preface to this opinion, to our minds the corroborating evidence did not make out, as the record shows it, a strong case. There was no testimony by physicians or other competent persons showing that as a result of any physical examination it had been ascertained that the young girl had been tampered with. It is true that by way of rebuttal the district attorney did offer as a witness a physician and started to examine him as to some examination made of the young girl, when he was stopped by an objection that the testimony was not rebuttal, which objection was very properly sustained by the trial judge. However, the responsibility rested with the jury to determine the truth of the facts charged. It determined them in favor of the guilt of the defendant and he must endure the penalty visited upon him.

The judgment is affirmed.

Conrey, P. J., and Works, J., *pro tem.*, concurred.