[Crim. No. 1060.   Second Appellate District, Division Two.—May 27, 1924.]

## THE PEOPLE, Respondent, v. MACON F. IRBY, Appellant.

[1] Criminal Law —Robbery—Evidence—Cross-examination—Form of Objection—Untenability of.—In a prosecution for robbery, where the questions by the deputy district attorney, relating to his attempt to bring out on recross-examination of defendant an alleged complete conversation at the time of defendant's arrest at a hotel, specifically called for what he was after as being a part of the conversation at the time of the arrest, defendant's objection only upon the ground that the matter called for was really part of a later conversation was not tenable, and there was no error upon the part of the trial court in permitting the questions in the face of the only objection which was made.

[2] Id — Evidence — Overruling of Objection — Error. — In such a prosecution, where it was obvious from a question asked by the deputy district attorney on the recross-examination of defendant that he was attempting to elicit something that was not a part of a certain conversation, and defendant objected upon the ground that the question was not proper cross-examination, stating in support of his objection that "He is asking now did he ever tell him that. I imagine he is trying to get clear away from that conversation to some other place," the trial court erred in overruling the objection.

[3] Id.—Evidence—Admission—Error.—In such prosecution, error was committed by the trial court in allowing the arresting officer to detail a conversation between defendant and the former at the police station following the arrest, where the statement attributed to defendant amounted to an admission on his part that he had been charged with another crime, and the admission bore no relevancy whatever to the crime for the commission of which defendant was on trial.

[4] Id.—Misconduct of Deputy District Attorney—Effect upon Rights of Defendant.—In such prosecution, the course of the deputy district attorney throughout the trial was most reprehen-

---

1.  See 2 Cal. Jur. 274; 8 Cal. Jur. 503; 26 R. C. L. 1048.
2.  See 2 Cal. Jur. 263; 8 Cal. Jur. 500; 26 R. C. L. 1046.
3.  See 2 Cal. Jur. 1020; 8 Cal. Jur. 614; 2. R. C. L. 247.
4.  Misconduct of prosecuting officer in making improper insinuations of other crimes against defendant as error, note, 8 **Ann. Cas.** 463. See, also, 8 Cal. Jur. 253; 2 R. C. L. 242.

sible, and defendant was deprived of that trial on the merits which he had a right to expect.

[5] ID.—EFFECT OF ERRORS UPON JUDGMENT—SECTION 4½, ARTICLE VI, CONSTITUTION. — Where from an examination of the entire cause, including the evidence, the appellate court is unable to determine whether the defendant would or would not have been convicted but for the errors of the court and the misconduct of the prosecutor, the provisions of section 4½ of article VI of the constitution may not be availed of in order to support the judgment of conviction.

---

(1) 16 C. J., p. 877, sec. 2199. (2) 40 Cyc., p. 2531. (3) 16 C. J., p. 638, sec. 1267. (4) 16 C. J., p. 886, sec. 2221, p. 891, sec. 2228. (5) 17 C. J., p 367, sec. 3750, p. 369, sec. 3751.

APPEAL from an order of the Superior Court of Los Angeles County and from an order denying a new trial. Russ Avery, Judge. Reversed.

The facts are stated in the opinion of the court.

Chauncey Gardner for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and J. L. Flynn for Respondent.

WORKS, J.—Defendant was convicted of robbery under an information in two counts. He appeals from the judgment of conviction and from an order of the trial court denying his motion for a new trial.

It is not necessary, for the purposes of the decision which we are about to render, to state even in a general way the facts involved in the second count of the information, and we shall recite but briefly, as a preface to certain portions of the record which we must state circumstantially, the facts upon which the first count is based. The name of the prosecuting witness is Solovich. At the time of the occurrences upon which the information rests he had resided at a certain apartment house, with one Harrigan as a room-mate, for nine years. Solovich's story is that on a certain evening he was on his way home and stopped to look at a show window near the apartment house in which he lived; that

---

5.   See 8 Cal. Jur. 599; 2 Cal. Jur. 1006.

he was there accosted by appellant, who made the assertion.
that they had met before—although Solovich says they had
not—that appellant persuaded Solovich to spend the night
with him at a hotel about a block distant from Solovich's
place of residence, and that when they got into the room
at the hotel appellant beat Solovich severely and robbed
him. Appellant, who took the witness-stand in his own
behalf, says that he met Solovich at the show window, but
denies that he pretended that they had ever been acquainted
before that meeting. He says that Solovich asked him to
procure a room at some hotel where they might spend the
night together, claiming that he, Solovich, was without funds
to procure a night's lodging for himself; that appellant
finally consented to do so; that they went together to the
hotel mentioned by Solovich in his testimony; that they un-
dressed and went to bed; that thereafter Solovich attempted
an obscene familiarity with appellant, leading the latter to
believe that Solovich intended to satisfy an unnatural sex
desire upon him, and that he then jumped out of bed and
administered to Solovich the beating described by the latter
in his testimony. Appellant denies specifically the · state-
ments of Solovich as to the alleged robbery.

Upon the cross-examination of appellant the following
transpired: "Mr. Costello [a deputy district attorney]:
Have you ever been convicted of a felony? A. No, sir.
Q. You say you called Mr. Solovich a degenerate? A. Yes,
sir. Q. Were you ever called one? A. No, sir. Q. You
are sure you have never been called one, or accused of being
one? Mr. Gardner [counsel for defendant]: I object to
that as not cross-examination and misconduct. The Court:
Objection sustained. Mr. Gardner: We ask the court to in-
struct the jury to disregard the remarks of the district at-
torney. Mr. Costello: I have been pretty liberal to you.
Mr. Gardner: I think that is highly prejudicial your honor.
The Court: Stricken out, and the jury instructed to disre-
gard it."

Later in the cross-examination appellant said something
about his desire to force Solovich "to get out of Los An-
geles," in which city the events mentioned in the testimony
transpired. The following then occurred: "Q. [By Mr.
Costello]: Why did you want him to get out of Los An-
geles? A. Because he is a degenerate, sir. Q. You are not
one, are you? Mr. Gardner: Objected to as not cross-exami-

nation, prejudicial; and we ask the court again to instruct
the jury to disregard the district attorney's remarks, which
we assign as misconduct. The Court: The jury are in-
structed to disregard the remarks of the district attorney.''

The persistency of the district attorney was again made
evident during the cross-examination of appellant. The
witness was asked by Mr. Costello: ''Just what is your un-
derstanding of a degenerate? . . . A. My opinion of a de-
generate is a man that will want another man to go directly
against the laws of nature, and have sexual intercourse with
another man, instead of a person of the opposite sex. Mr.
Costello: Did Mr. Solovich try that with you?'' It is un-
necessary to set down the answer. The examination pro-
ceeded: ''Q. Did you try to do it to him? A. I hit him
because he wanted to. Q. I am asking you—did you? Mr.
Gardner: Just a moment. He has answered the question.
The Court: No, he has not answered it. A. Did I try to
do it to him? Q. Yes. A. No, sir. Q. You never tried
that on any young man in your locality. A. No, sir; abso-
lutely not. Q. Never have been accused of it? Mr. Gard-
ner: Objected to as immaterial, and ask the court to in-
struct the jury to disregard it, and assign the question as
misconduct. The Court: The jury will eliminate the ques-
tion from your minds, and pay no attention to it.''

The same subject came up yet again on appellant's cross-
examination. On direct he testified that on the way to the
hotel where he and Solovich took the room he noticed that
Solovich had certain effeminate mannerisms. He asked how
they were acquired and Solovich said he acted in that man-
ner because he had been a female impersonator on stage and
screen. On cross-examination appellant answered a certain
question thus, in part: ''I was paying more attention to
Mr. Solovich's actions at that time, rather than his words
. . . and I questioned him as to why he acted that way.''
Mr. Costello's cross-examination then proceeded: ''Q. How
did he act? A. Why, I probably could demonstrate it but—
Q. All right; let's have you demonstrate it—will you? Mr.
Gardner: We object to all that, your honor, not cross-ex-
amination. The Court: Overruled. . . . A. When he was
walking down Ninth Street towards Main, he had one hand
on his hip that way (indicating) and was walking something
like this (indicating). Mr. Costello: You felt then you were
right in clover, didn't you? Mr. Gardner: Objected to as

misconduct, not cross-examination, and ask the court to instruct the jury to disregard it. The Court: Objection sustained, the jury instructed to disregard the question."

Appellant was arrested at the Majestic Hotel, in Los Angeles, two or three days after the happening of the events upon which the information is based. The arresting officer was one Stelzriede. On the redirect examination of appellant his counsel asked him to state a conversation which occurred between him and Stelzriede at the time of the arrest. Appellant did so, but the conversation given bore no relation whatever to any matters similar to those we have set forth in the foregoing extracts from the testimony. The recross-examination of appellant then occurred, the opening portion of it being as follows: "Mr. Costello: Is that all the officer said to you? A. Not all. Q. Now, tell us all the officer said to you, will you? Mr. Gardner: At that place. Mr. Costello: I am cross-examining. Mr. Gardner: I am here to look out for the defendant. The Court: I assume it will be confined to that conversation." The witness then related some matters unconnected with the subject matter of our present statement. The recross-examination then proceeded: "Q. Did Mr. Stelzriede ask you if you were ever arrested before? Mr. Gardner: Objected to on the ground that the witness has stated that he didn't remember any other part of the conversation. The Court: He has the right to ask the question. Overruled. A. No, sir, he didn't. Q. Did Mr. Stelzriede ask you if you were ever arrested before, and you said yes, and he asked you what for? Mr. Gardner: Hold on, we object to that—I know what is coming. Mr. Costello: I know what is coming, too. The Court: You will address the court, gentlemen. Mr. Gardner: There was another trial of this case, your honor, and I am in a little better position to know what is in counsel's mind than your honor, and it is clearly incompetent, irrelevant and immaterial; and if he wants to ask it, I ask that the jury be excused until we can argue the matter. Mr. Costello: You are not afraid, are you? Mr. Gardner: I object to counsel's remarks, and assign the same as misconduct. The Court: Yes; don't interrupt him." Then followed a colloquy showing that the trial judge and both counsel concurred in the untenable view that the People were entitled to show the entire conversation at the time of the arrest, notwithstanding the fact that parts of it may have related to

matters not cognate to those brought out on the direct examination. The colloquy ended and the recross-examination proceeded, thus: "Mr. Costello: I have a right to test his credibility on that conversation. The Court: I think so; if the door is opened, he can go all the way in. . . . Q. Now, then, I will ask you if Mr. Stelzriede, at that time and place, didn't ask you if you were ever arrested before, and you answered 'Yes'? A. He did not. Q. And if he didn't then ask you what you were arrested for, and you told him that six weeks prior to that time you were arrested— Mr. Gardner: We object to this, because . . . he is trying to elicit testimony that occurred at another conversation some place else. . . . I submit it is dangerous ground. Mr. Costello: I have a right on cross-examination to test his recollection. Mr. Gardner: He is trying to put something in here that is improper. Mr. Costello: I am not responsible for counsel's errors, if he opens the door. The Court: I have no means of knowing if it was this conversation, or some other conversation. Of course, I will ask Mr. Costello to be careful not to mix up two conversations. Mr. Costello (continuing) :—then on suspicion and taken to the district attorney's office for sodomy on a boy sixteen years old? A. No, sir. Q. Did you ever tell Stelzriede that? Mr. Gardner: Objected to as not proper cross-examination. The Court: Overruled. Mr. Gardner: He is asking now did he ever tell him that, your honor. I imagine he is trying to get clear away from that conversation to some other place. Mr. Costello: Will you answer that question? Mr. Gardner: Just a minute. What did your honor rule on it? The Court: I will overrule the objection. A. I never at any time told Mr. Stelzriede any such thing. Mr. Costello: Did you tell him anything in substance or effect like that? A. No. Q. Did you tell him you had been arrested for suspicion of sodomy? A. I didn't; no, sir."

Stelzriede was then called by appellant and on direct examination testified only as to a search of appellant which he made at the time of the arrest. Mr. Costello plunged into the cross-examination of the witness thus: "Mr. Costello: Mr. Stelzriede, at the time of the defendant's arrest, did the defendant tell you, did you ask the defendant whether or not he had been arrested before, and he said 'Yes?' A. Subsequent to the arrest he was asked that question and answered in the affirmative, yes. Q. Did you ask

him on what charge? A. I did. Q. And what was his answer? Mr. Gardner: That is at this conversation, or at some other time? A. I said subsequent to his arrest, that is after he had been brought to the station, as I remember it.'' Mr. Gardner then objected to the question addressed to the witness and Mr. Costello insisted upon it as proper impeachment of the answer of appellant that he had never at any place told Stelzriede that he had been arrested before. Then occurred the following: ''Mr. Gardner: That is the question we objected to on the ground it was not cross-examination. That is a matter he was trying to bring out at a conversation at the Hotel Majestic; then he wanted to ramble all over the field and go somewhere else. Mr. Costello: I am not responsible for your opening the door. Mr. Gardner: You opened the door. I submit it is misconduct, and counsel knows it; and it is dangerous misconduct, too. The Court: I am inclined to think it would be impeachment on a collateral matter. . . . The jury are instructed to disregard the conversation that occurred between Mr. Stelzriede and the defendant at a time other than the time of the arrest.''

The appellant having rested his defense Stelzriede was called in rebuttal. He testified that he had a conversation with appellant at the police station shortly after the arrest, that at the time there was no promise or reward or hope of immunity offered to appellant and that no force or violence was used toward him, and that the statements made by him were free and voluntary. The examination then proceeded: ''Q. Now, state the conversation? Mr. Gardner: Your honor, I object to that. He is trying to get in the same old matter. I can state I have heard the testimony and so has counsel, and there is nothing as to a confession, and it is simply an effort to get testimony in that the court has already ruled is incompetent and immaterial. We . . . feel, and we do assign such conduct on the part of the district attorney as misconduct. The Court: I think certain evidence has been brought out here that would make the matter admissible. Objection overruled. You may answer. A. I then asked the defendant if he all together [*sic*] mentally. He said, 'Yes,' and during the conversation I asked him if he had ever been under arrest for anything previous to this, and he said, 'Yes.' I asked him what the facts were, and he said he had been arrested

on suspicion of sodomy. I asked him if he had been found guilty and he said 'no'; that the case had been dismissed against him. . . . Mr. Gardner: We move to strike out that testimony as something outside of the issues. . . . It has no business here; . . . and it is clearly introduced by the district attorney for the purpose of prejudicing the jury and putting the defendant in a bad light with the jury. He is not on trial for any such offense. The charge here is robbery. The Court: I think it is germane; motion denied. . . . Mr. Costello: Now, will you state all the conversation, please? A. . . . I asked him if he was living in town, or if he was living with anybody—if he had a woman. I asked him several questions along those lines. . . . Mr. Gardner: I move to strike out the testimony of the witness on the ground that it is not rebuttal in any way at all, and it is not within the issues of the case. The Court: Motion denied.''

It is contended by appellant that the portions of the record which we have set forth show misconduct on the part of the district attorney and show that the court erred in permitting the people to introduce the evidence which went in over appellant's objections and which remained in despite his motions to strike. We shall consider first the claim of error as to the rulings of the court. The condition of the part of the record showing the attempt of the district attorney to bring out the alleged complete conversation at the time of appellant's arrest at the Majestic Hotel is most peculiar. Appellant did not object upon the ground that the part of the conversation sought to be elicited was not proper, but only upon the ground that the matter called for was really part of a later conversation. [1] This objection was not tenable, as the questions of the district attorney specifically called for what he was after as being a part of the conversation at the time of the arrest. The fact that the evidence so persistently sought was not a part of that conversation reflects upon the conduct of the district attorney in asking for it, as we shall later have occasion to point out, but there was no error upon the part of the court in permitting the questions in the face of the only objection which was made [2] The part of the record just mentioned is followed by the question addressed to appellant, ''Did you ever tell Stelzriede that?'' It was objected

that this question was not proper cross-examination and Mr. Gardner specifically pointed out, in support of the objection, that "He is asking now did he ever tell him that. I imagine he is trying to get clear away from that conversation to some other place," this latter statement being more than a mere matter of imagination, as the truth of it was obvious from the question propounded. It is plain that the court erred in overruling the objection, so plain that no reason need be assigned for the statement. [3] Another error was committed by the court in allowing Stelzriede to detail the conversation between appellant and him at the police station following the arrest. There is no theory upon which we can conceive that the evidence was admissible. The statement attributed to appellant amounted to an admission on his part that he had been charged with another crime, and the admission bore no relevancy whatever to the crime for the commission of which he was on trial. Mr. Gardner was quite justified in reminding the court, in aid of his objection to the evidence, that appellant was under a charge of robbery and not of sodomy.

[4] As to the conduct of the deputy district attorney, his course throughout the trial was most reprehensible. Instead of proceeding with a fair and open endeavor to convict appellant upon proper evidence, as was his duty, he subjected him to treatment which was most oppressive and which deprived him of that trial on the merits which he had a right to expect. We shall select, in support of this statement, one of the instances exhibited by the portion of the record which we have quoted. The incident to which we refer was the attempt to show by Stelzriede, as a part of the conversation at the Majestic Hotel, a conversation which occurred later at the police station. Mr. Gardner pointed out forcibly that he knew, and that the deputy district attorney knew, that the conversation which the latter sought did not occur at the hotel but at another place. He asserted that the fact was so well known for the reason that there had been a previous trial of the cause. A transcript of the earlier trial is on file upon the present appeal. It shows that the first trial commenced but thirty-three days before the commencement of the trial from which this appeal results and that Mr. Costello was present at that trial as sole counsel for the People, as he was at the second trial. It

does not appear possible that he could have forgotten when the conversation occurred. Stelzriede had not forgotten the true sequence of events, as the final outcome showed. If, however, Mr. Costello had forgotten, he was reminded of the truth by the plain statements of Mr. Gardner and he should then have relinquished his persistent attempt to engraft the second conversation upon the first, especially as the trial judge warned him not to mingle the two. Turning now to another phase of the attitude of the deputy district attorney, it might appear at first glance that his questions addressed to appellant and attempting to show an acquiescence by the latter in the alleged unmentionable conduct of Solovich at the hotel were proper. The questions alluded to were such as, for instance, "Did you try to do it to him?" Questions of this sort, we say, might appear, without mature consideration, to have been proper, and this upon the theory that if the acquiescence of appellant were shown it would have discredited his story as to the reason for his beating Solovich. We do not decide that the evidence would have been proper, for the reason that the point is not presented by the record. It is apparent that the deputy district attorney was not justified in asking questions along the line indicated. It was not and never has been the theory of the prosecution that the evidence was admissible upon the theory stated. There is no hint in the testimony of Solovich of any acquiescence of appellant in the acts which the latter charges against Solovich—as, indeed, there could not well be under all the circumstances of the case—the deputy district attorney did not contend for its admissibility at the trial on any such ground and no such contention is made by the attorney-general on this appeal. The asking of the questions referred to was but part of the misconduct of which the deputy district attorney was guilty throughout the trial. We need not pause to inquire to what extent, if at all, that misconduct is palliated by the fact that, finally, the judge ruled with the prosecution and permitted the conversation which occurred at the police station. Laying that final matter aside, it is yet evident that the misconduct of the prosecuting officer is palpable and inexcusable and deserving of the stern rebuke of this court.

We have as yet cited no authority upon the points we have discussed, but such authority is at hand. That the trial court erred and that the prosecutor was guilty of mis-

67 Cal. App.—34

conduct is made manifest by a perusal of the opinions in such cases as *People* v. *Tufts,* 167 Cal. 266 [139 Pac. 78], and *People* v. *Anthony,* 185 Cal. 152 [196 Pac. 47]. In order to determine whether the error of the court and the misconduct of the prosecutor have "resulted in a miscarriage of justice," as that expression is used in section 4½ of article VI of the constitution, we have made an examination of the entire cause, including the evidence. [5] From that examination we are unable to determine whether appellant would or would not have been convicted but for the errors of the court and the misconduct of the prosecutor. He may well have been substantially injured by them. Under such circumstances the provisions of section 4½ may not be availed of in order to support the judgment of conviction (see *Freeman* v. *Adams,* 63 Cal. App. 225 [218 Pac. 600], and cases cited). The misconduct of the district attorney comes well within the language of the supreme court in one of the cases to which we have referred above: "It is to be regretted that prosecuting counsel, in the heat of contest and in the desire for victory, sometimes forget that the function of a district attorney is largely judicial, and that he owes to the defendant as solemn a duty of fairness as he is bound to give to the state full measure of earnestness and fervor in the performance of his official obligations. Again and again has this court commented upon the course of prosecutors in this regard, but instances of such conduct are all too common. We have no doubt that in the present case the prosecutor's demeanor and his improper questions deprived the defendant of that fair trial which ought to have been his under the law. For this reason he should not be subjected to the result of a verdict so induced" (*People* v. *Tufts, supra*). In solving the question presented under the constitution we do not find it necessary to state even a summary of the entire testimony in the cause. It is enough to say that if the jury had acquitted appellant the verdict would have found abundant support in the evidence. It is pertinent here to again mention the fact that there was a disagreement of the jury upon the first trial of appellant. It is asserted in the briefs that on that trial the jury stood seven to five, but as to whether the larger number was for an acquittal or for a conviction we are not informed. We are

convinced that, because of the court's errors and the deputy district attorney's misconduct, appellant was denied a fair trial.

There are no other points which require consideration. Judgment and order reversed.

Finlayson, P. J., and Craig, J., concurred.