[Crim. No. 1612. Second Appellate District, Division Two.—May 17, 1928.]

THE PEOPLE, Respondent, v. GEORGE R. ADAMS, Appellant.

8

A. S. Maloney and Duckworth & Harrison for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, George H. Johnson, District Attorney, and C. O. Thompson, Deputy District Attorney, for Respondent.

THOMPSON, J.—The defendant was charged by information with the crime of rape committed by force and vio-

lence upon the person of a woman over the age of twenty-one years. He was found guilty by the verdict of the jury and appeals from the judgment and order denying his motion for a new trial.

The facts are very much in dispute and it would serve no useful purpose to recite in detail the testimony of the prosecutrix and the appellant, and those who corroborate them. It may be fairly said that the testimony established a growing intimacy between appellant and prosecutrix, who had been in his employ for some months prior to the alleged offense, covering a period of four or five weeks and evidenced by theater and dinner engagements and rides in appellant's automobile, and declarations of love by appellant for prosecutrix. He flatly disputes her testimony relating to the alleged offense and says that what occurred while they sat in the rear seat of his Hudson brougham on Shandon Hill outside of San Bernardino city, at which time she says the offense was committed, might be described in the vernacular of youth as a "necking party." Suffice it to say that there are incidents which strongly tend to support her version of the affair, and there are also, as the evidence appears to us from the printed page, incidents indicating that his statement is the true one. Evidence was introduced by the prosecution from the father, mother, and grandmother of her complaint, after reaching home and while in the bathroom, and that her clothes were covered with blood. Testimony was also offered by the defense tending to contradict their statements. This latter testimony was produced through the medium of a Mrs. Cummings, a cousin of appellant, and another witness who was a neighbor of hers, who say that they visited the prosecutrix during the night of and not long after the alleged offense and found her calm and composed, without sign of bruise or hysteria, and who say that she said to them in effect that if they could get "a large enough settlement there would not be any publicity." Testimony was also introduced by the defense to show that the prosecutrix knew that appellant was putting $5,000 into a business corporation of which she was to be assistant secretary, and that before a complaint was sworn to an attorney employed by Mr. Halley, her father, had, in an interview with defendant's counsel, offered to settle for $5,000.

■ While the appellant argues that there is not sufficient evidence to support the verdict we have concluded after a careful and thorough study of the transcript that this assignment does not require us to set forth in detail testimony which, but for the error to be noted hereafter, would be quite ample to uphold the verdict.

■ Appellant also assigns as a reason why the judgment should be reversed the misconduct of a deputy district attorney during the argument to the jury, and in this we think he must he upheld. Part of the objectionable matter is as follows:

"*Ah, ladies and gentlemen, is the American Legion or is a soldier of America proud of a man that would hide behind his record of service to his country to defend him for conduct like this? Why hasn't he brought some of his good American Legion friends in here to have his character for morality and standing in the community—*

"Defense Counsel: *Just a moment. We object to that and assign it as error, and ask the court to instruct the jury to disregard it.*

"The Court: *Counsel, I think that is without evidence. The remark will be stricken out and the jury will disregard the comments.*

"Deputy District Attorney: *Ah, ladies and gentlemen of the jury, if I were on trial, and I believe if you were on trial, under the law they could not impeach—*

"Defense Counsel: *Object to that and assign it as error on the ground that is not the law, that the state has a right to impeach the character.*

"The Court: *There is no evidence either way on the question of character, and the subject should not be discussed.*

"Defense Counsel: *Let's get the record clear. We wish to assign it as error.*

"The Court: *There is nothing in the record showing that the remark was completed, but the subject of the character of the defendant is not an issue and will not be commented upon by counsel.*

"Deputy District Attorney: *Ladies and gentlemen, if I were on trial for an offense like this I would not stand on a war record in defense of my character. I would bring the people of my community, with whom I lived and with whom*

*I had done business, and I would let those people set upon the witness stand and tell you as to my moral character.*

"The Court: . . . *the court ruled that you were not to refer to the question of the character of the defendant, as to the evidence or lack of evidence respecting his character.*

"Deputy District Attorney: *I am simply talking about standing on his war record.*

"The Court: *Refrain from any question as to the witness testifying as to his character and not testifying as to his character. Those remarks will be stricken out and the jury are instructed to disregard them.*" (Italics ours.)

These statements of the deputy district attorney are clearly misconduct and although the court endeavored to undo the damage wrought by the uncalled-for and entirely illegitimate remarks, the deputy exhibited a disregard for the court and for the rules of evidence and failed to display that judicial frame of mind which should characterize those who hold the high office of deputy district attorney. He displayed great persistence in his effort to impress upon the jury the fact that defendant had failed to call character witnesses. In fact, his attitude in this regard is accentuated by the mildness (at least as it appears from the record) of the court's rebuke. Counsel would not have been dealt with harshly had the court imposed a much more severe reproof.

██ The next matter assigned as objectionable relates to the testimony of two witnesses for the defense who testified that Mr. Richards offered to settle the affair for $5,000 and the testimony of Richards for the prosecution that he did not. Richards also testified that the deputy district attorney was present during at least a part of the conversation, but the latter did not take the stand. The record is as follows:

"Deputy District Attorney: *She told you she waited there until Dave Richards came in, and after Dave Richards came in she went out with him and went to this office around there and got those personal effects and had the conversation on Fourth Street at the corner where it enters the court, and from there she went to the County Jail to see Adams, and returned to Mr. Maloney's office about noon That was her testimony on cross-examination. Maloney knows it, Harrison knows it, and this jury knows it, and I say, ladies and gentlemen, I was in that office and I saw Mr.*

Richards come in. I heard him introduced to Mrs. Cummings.

"Defense Counsel: *He didn't go on the stand, and I object to his testifying.*

"The Court: *The jury will be instructed that any statements of counsel are not to be received as evidence.*

"Deputy District Attorney: *I am discussing the testimony. Richards said he was introduced. I was there and I know that Dave Richards told you the truth.*

"Defense Counsel: *If the court please, just a moment. I assign it as error, that remark where counsel says he was there. He didn't go on the stand, and I assign it as error.*

"Deputy District Attorney: *Dave Richards said I was there.*

"The Court: *Proceed with the argument.*

"Deputy District Attorney: *And I know, ladies and gentlemen, that Dave Richards, when he entered that office, did not say 'It can be settled for $5000,' and Maloney knows it too. I was there. Dave Richards did not say it could be settled for $5000, and Dave Richards says he never said it at any time, and I believe Dave Richards told you the truth. That is what I believe about it.*

"Defense Counsel: *Now if the court please, I object to the statement of counsel where he passed the lie to me, and assign it as error and misconduct upon the part of the district attorney, for the reason that we did not have an opportunity to cross-examine him.*

"The Court: *Proceed with the argument.*

"Deputy District Attorney: *I want to ask you one thing, ladies and gentlemen. If Dave Richards had been there previous to my being there and had been introduced to this woman, as the defense claim, wouldn't it have been an extraordinary thing for him to have received a second introduction on this same morning in the same office to the same woman within a very few minutes? What do you think about it? Do you mean to tell me that if someone would come to your office and you gave them an introduction to a party, and in a few minutes they came back you would give them another introduction to the same party? You would not do it, and I don't think Maloney would do it; and I did hear him, as Dave Richards said in his testimony, I did hear him introduce Mrs. Cummings to Dave Richards.*

"The Court: *Counsel, I hardly think you have a right to testify. You are not under oath.*

"Defense Counsel: *If the court please, I believe we should make our record clear on this. We object to the statement of the testimony by Mr. Thompson before this jury, and request at this time that the jury be instructed to disregard it, and assign it as misconduct on behalf of the district attorney.*

"The Court: *Any remarks on the part of the court or on the part of counsel on either side as to what the facts are in this case are not to be received as evidence by the jury. They are to look only to the evidence produced in open court.*

"Defense Counsel: *If the court please, we don't want to interrupt again, but we want it understood that our objection goes to his statements along this line that he makes as to his own testimony. We don't want to interrupt him again, and he can go on forever if he wants to.*

"The Court: *I think that counsel should confine his argument to the evidence in the case.*" (Italics ours.)

The tenacity of the offender might have been admirable if employed in proper channels, but not where it evidences an attempt to pervert the course of justice. Not once, but four different times he persisted in testifying, "*I was in that office and I saw Mr. Richards come in. I heard him introduced to Mrs. Cummings.*" After being told in effect to desist he offended: "*I was there, and I know that Dave Richards told you the truth.*" The court failed to reprimand counsel or instruct the jury, and for the third time counsel throws his testimony without privilege of cross-examination into the scales against the defendant: "*And I know, ladies and gentlemen, that Dave Richards, when he entered that office, did not say 'It can be settled for $5000' and Maloney knows it too. I was there.*" For an unaccountable reason the trial judge again neglected to administer the stern reprimand of the court or set the minds of the jury on the right trail and counsel again took up the burden of a voluntary unsworn witness: "*And I did hear him, as Dave Richards said in his testimony, I did hear him introduce Mrs. Cummings to Dave Richards.*" (Italics ours.) The respondent argues that the court corrected the error in the first assignment, and the defendant waived the

failure of the court to correct it in the second assignment, and, further, that the deputy district attorney had the right to argue as he did in the matter last assigned as objectionable. We think a complete answer to respondent's contention is found in the language of *People* v. *Valliere*, 127 Cal. 65 [59 Pac. 295], as follows: "In addressing the jury, among other matters, the prosecuting officer said: 'This trunk was not searched for this theft in Chico, but for another theft that I know of to my own knowledge.' This statement was in the nature of testimony. It was the assertion of a damaging fact not only not proven, but in regard to matters which had been expressly ruled out. The misconduct was much more flagrant than that in *People* v. *Bowers*, 79 Cal. 415 [21 Pac. 752]. Indeed, among the numerous cases discussed in *People* v. *Wells*, 100 Cal. 459 [34 Pac. 1078], there is none worse. In my opinion, the examination was inexcusable, and the statements contained in the closing address were an outrage upon justice, which ought not to be allowed to pass. The court promptly rebuked the attorney, but that did not cure the injury. Rebukes do not seem to have any effect upon prosecuting officers, and probably as little upon juries. The only way to secure fair trials is to set verdicts so procured aside." And also in *People* v. *Westcott*, 86 Cal. App. 298 [260 Pac. 901], wherein it is said: "The argument which we have quoted shows a persistent disregard by the district attorney of the directions and admonitions of the court, and an apparent intent so to impress the matter on the jury that they could not forget it, no matter what the instructions of the court might be. It manifests a complete departure from the spirit of fairness which should animate the conduct of that officer, and must be regarded as prejudicial misconduct. (*People* v. *Derwae*, 155 Cal. 592 [102 Pac. 266]; *People* v. *Hail*, 25 Cal. App. 342, 358 [143 Pac. 803]; *People* v. *Keko*, 27 Cal. App. 351 [149 Pac. 1003]; *People* v. *Irby*, 67 Cal. App. 520, 528 [227 Pac. 920]; *People* v. *Fleming*, 166 Cal. 357, 381 [Ann. Cas. 1915B, 881, 236 Pac. 291]; *People* v. *Tafts*, 167 Cal. 266, 273 [139 Pac. 78]; *People* v. *Anthony*, 185 Cal. 152 [196 Pac. 47]. . . . In short, we are unable to determine whether appellant would or would not have been convicted had the testimony as to that declaration not been admitted and the argument of the dis-

trict attorney thereon not been made. In such case section 4½ of article VI has no application to uphold the judgment. (*People* v. *MacPhee*, 26 Cal. App. 218, 226 [146 Pac. 522]; *People* v. *Irby*, 67 Cal. App. 520, 530 [227 Pac. 920]·; *People* v. *Degnen*, 70 Cal. App. 567–606 [234 Pac. 129]; *People* v. *Black*, 73 Cal. App. 13, 38 [238 Pac. 374].)'' We have examined all of the authorities cited by the attorney-general and in none of them wherein the error was held either to have been cured or unprejudicial, do we find misconduct so repeated and persisted in as in the present case. We cannot fail to agree to the statement found in *People* v. *Edgar*, 34 Cal. App. 459 [167 Pac. 891], that where the misconduct ''is so pronounced and pernicious that it is not in human nature to forget or disregard its prejudicial effect, then manifestly a mere admonition or any number of admonitions will not suffice to right the wrong done, and the only remedy remaining is to be found in a reversal of the judgment.'' Here the evidence is not of such a character that this court can say that the appellant would have been convicted had it not been for the argument of the prosecutor. In fact, when he added his testimony by way of argument in so persistent a fashion he must have had a tremendous effect upon the mind of the jury. And in our consideration of whether the provisions of section 4½ of article VI of the constitution may be invoked as a protecting mantle to cover up the shortcomings of the deputy district attorney we advert to the language of our present Chief Justice while on the district court of appeal, in the case of *People* v. *De Vries*, 52 Cal. App. 705 [199 Pac. 867], as follows: ''The records in appealed criminal cases disclose an increasing persistence on the part of prosecuting attorneys to go beyond the line of proper conduct in their arguments. So frequently is this being done, that while we disavow any imputation of wilful misconduct in the instant case, we are becoming convinced that over-zealous prosecutors sometimes do it intentionally, and rely on the appellate court to save a conviction by the application of section 4½ of article VI of the constitution. There are bounds beyond which the saving grace of that provision may not pass, and the appellate courts should not be called upon to spread it, like a 'mantle of sweet charity,' over intentional acts of misconduct. Frequent warnings in

relation to the practice proving ineffectual, reversals on appeal must be anticipated if right of defendants to a fair trial is to prevail." And also in this same respect we cannot fail to observe that the deputy district attorney in his argument in the present case again passed beyond the bounds of legitimate argument, although it is not assigned as misconduct, in his implied indorsement of the righteousness of a father in taking the law into his own hands when he said: *"Were he in that beautiful southland where his counsel says he was nurtured and reared I do not believe gentlemen and ladies that this would be the kind of case that would be tried in court,* BUT TRUE TO THE TRADITION OF THE SOUTHLAND THAT HAS PROTECTED WOMANHOOD, *I assume that if this case were in the southland from whence he came that the father of this girl would be on trial today for his life probably, protecting the honor of his daughter."* (Italics ours.) Altogether this case is such that the constitutional provision cannot save it from a reversal.

Appellant complains of the admission in evidence of the substance of the complaint made by the prosecutrix to her father, mother, and grandmother. In effect it was that appellant had "ruined her" and that "he did it." According to her testimony, these statements were made within a very few minutes after the alleged offense and when for the first time she was not afraid that if she gave an alarm "he might come after" her "again." A complete answer to this claim of appellant is found in the case of *People* v. *Lopez*, 33 Cal. App. 530 [165 Pac. 722], wherein it is determined upon the authority of *People* v. *Wilmot*, 139 Cal. 103 [72 Pac. 838], that the witness may tell what the nature or subject of her complaint was and "whether he phrased it as that she complained of a rape, or that she said, as he stated, that she had had sexual intercourse with the defendant is not material." It is undoubtedly true that where the complaint made is not a part of the *res gestae*, the witness may not relate a conversation detailing the offense said to have been committed but here we find no such objectionable recital. It is therefore not necessary for us to determine whether the complaint was a part of the *res gestae*, although made shortly after the alleged

occurrence and when the witness says she was still laboring under its excitement.

We have heretofore recited sufficient of the testimony concerning the offer said to have been made to settle with appellant without publicity for $5,000 to understand the nature of his objection to an instruction given by the court as follows: "You are instructed that the court has permitted the examination of witnesses and the introduction of evidence relative to a proposed settlement. In this connection, you are instructed that the testimony of the prosecutrix may be impeached by evidence of a conspiracy to extort money or property from the defendant, in which she is a co-conspirator. She cannot be impeached upon the theory that a conspiracy existed to extort money or property from the defendant, by showing acts and conversations of others in which she had no part, unless it is proven that she authorized the same or the same was done by her authorized agent. In this same connection, you are instructed that this line of examination and the introduction of testimony in this respect was permitted for the sole purpose of impeaching the credibility of the testimony of the prosecutrix. A settlement, if there was any such settlement, or a proposal for such settlement, if there was any, is not of itself a defense to the crime charged, and even after hearing such evidence, if you believe beyond a reasonable doubt that the defendant has committed the crime charged against him you should find the defendant guilty as charged, even though you may believe that there was a proposal to make a settlement with the defendant."

It is clear that the instruction would have been more accurate had the words O. T. Halley, Mrs. O. T. Halley, and Mrs. Emma Herndon been added thereto following the word prosecutrix, or had it been so framed as to state that the testimony was permitted for the sole purpose of impeachment, but not as constituting a defense to the crime charged. While in and of itself the failure to accurately word the instruction might not be sufficiently prejudicial to warrant a reversal we call attention to its defect in order that on a retrial such care may be taken in its construction as to obviate an attack upon it.

Appellant urges that the verdict of the jury which reads: "We, the jury in the above-entitled action, find the

defendant guilty of rape," is insufficient because it fails to specify the kind of rape, and as he says, "without making any recommendation as to the punishment in the event by their verdict they intended to find the defendant guilty of statutory rape." The information in this action charged the commission of rape and that it was accomplished without the consent of prosecutrix and "when her resistance was forcibly overcome by said defendant." The uncontradicted evidence shows that she was twenty-one years of age. In other words, there was but one offense of which the defendant could be found guilty. Under section 1151 of the Penal Code, which provides that a general verdict of guilty "imports a conviction of the offense charged in the indictment" and the authorities which declare that the form of the verdict is immaterial if the intention to convict of the crime charged is unmistakably expressed (*People* v. *Tilley,* 135 Cal. 61 [67 Pac. 42], *People* v. *Mercado,* 59 Cal. App. 74 [209 Pac. 1035], and *People* v. *West,* 73 Cal. 345 [14 Pac. 848]), it is apparent that the verdict is sufficient in form and substance.

Appellant also assails the judgment because the judge of the trial court examined the prospective jurors and at the conclusion of his examination stated that in his opinion the examination for grounds upon which to base a challenge for cause was sufficient and asked counsel to proceed with the exercise of their peremptory challenges. Nowhere does it appear that counsel desired to ask a question not covered by the examination theretofore conducted and nowhere does it appear that such a question would have been disallowed if counsel had made the request. Under these circumstances and on the authority of *People* v. *Edenburg,* 88 Cal. App. 558 [263 Pac. 857], we cannot say that error was committed by the court in this regard. Counsel also complains, and the transcript discloses, that the questions by the trial judge were propounded to the prospective jurors collectively and not individually. The record also discloses that the questions were not so framed as to call for some physical manifestation upon the part of the individuals betokening affirmation or negation which might be translated by the reporter into the record. We have had occasion heretofore to doubt the wisdom of collectively examining prospective jurors (*People* v. *Riordan,*

79 Cal. App. 488 [250 Pac. 190]; *People* v. *Edenburg, supra*), and especially is this true where the record is not so kept that we may be able, or counsel might have been able at the time of the trial, to ascertain the minds of those whom the court was questioning. We cannot say, however, from the state of the record, particularly in view of the silence of counsel and their apparent understanding and assent to the proceeding, that the defendant was denied a trial by a fair and impartial jury. So far as is manifest from the record, each and all of the twelve jurors were entirely satisfactory to the defendant. Indeed, counsel after exercising six peremptory challenges stated ''We pass the jury for cause.'' With these facts before us it does not appear that defendant was deprived of any substantial right in the questioning of prospective jurors. (*People* v. *Schafer*, 161 Cal. 573 [119 Pac. 920], and *People* v. *Craig*, 196 Cal. 19 [235 Pac. 721].)

The last ground assigned by appellant relates solely to the motion for a new trial based upon the fact, as was made to appear by affidavits, that some time after the pronouncement of sentence the appellant was adjudged insane and committed to the Southern California State Hospital for treatment, whence he was substantially discharged as restored to sanity. Coupled with these averments the affidavits set forth that the appellant conducted himself strangely during the course of the trial. It might possibly be that if the testimony made it positively clear to us that the defendant was not of sound mind at the time of the trial, we should be authorized to interfere with the sound discretion lodged in the trial court. It does not, however, make such impression upon us, and the fact that the trial judge had ample opportunity to observe his actions and demeanor during the course of the trial, makes patent the reason why the discretion is lodged there, rather than in the appellate tribunal.

Judgment and order reversed.

Works, P. J., and Craig, J., concurred.