[Crim. No. 274. Second Appellate District.—April 28, 1913.]

THE PEOPLE, Respondent, v. H. KIZER et al., Defendants; E. E. KIRK et al., Defendants and Appellants.

CRIMINAL LAW—CONSPIRACY—PERSONS JOINING AFTER FORMATION.— Any one who, after a conspiracy is formed, knows of its existence and joins therein, becomes as much a party thereto, from that time, as if he had originally conspired.

ID.—CIRCUMSTANTIAL EVIDENCE.—A conspiracy may be proved by circumstantial evidence.

ID.—SUFFICIENCY OF EVIDENCE TO SUSTAIN CONVICTION.—In this prosecution for conspiracy to violate a municipal ordinance forbidding public meetings or speeches within certain districts of the city, the verdict of guilty is supported by the evidence, although the defendant's connection with the offense is established only by circumstantial evidence.

ID.—EVIDENCE—PROTESTS AND THREATS.—In such prosecution protests made against the passage of the ordinance, and threats to violate it in the event of its enactment, made by the defendants, are admissible in evidence.

ID.—KNOWLEDGE OF CONSPIRACY—EVIDENCE TO SHOW.—Knowledge of the conspiracy may be shown by independent evidence, whether affecting both defendants or each separately; the question being, Did both parties have knowledge of the conspiracy actually formed to which they afterward became parties through a violation of the law?

ID.—REFUSAL OF MOTION TO STRIKE OUT EVIDENCE.—The refusal to strike out the testimony of a witness with reference to discussions of plans at meetings to oppose the enactment of the ordinance is not erroneous. There can be no criticism of persons who earnestly and honestly oppose proposed legislation, taking all legitimate steps necessary in their opinion to prevent its enactment.

ID.—APPEAL—HARMLESS ERROR.—The mere fact of error does not make out a *prima facie* case for reversal which must be overcome by a clear showing that no injury could have resulted.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—OBJECTION—REVIEW ON APPEAL.—It is essential, in order that misconduct of the district attorney be reviewed, that his acts be called to the attention of the court at the time, that an opportunity may be afforded to correct the abuse, and, if possible, avoid error and mistrial; an appellate court will not entertain an objection of this kind first made therein.

ID.—ERROR NOT RESULTING IN MISCARRIAGE OF JUSTICE.—Reviewing courts are not permitted, where matters prejudicial in their character appear in the record, such as the misconduct of the district attorney, to reverse the judgment, unless from the entire record it appears that there has been a miscarriage of justice.

ID.—EVIDENCE OF PROTESTS AND THREATS—CURING ADMISSION.—In a trial for conspiracy to violate a municipal ordinance which forbids public meetings and speaking in certain districts of the city, error, if any, in admitting evidence of protests and threats made by the defendants before the passage of the ordinance, is not cured by the defendants offering evidence explanatory of their acts.

APPEAL from a judgment of the Superior Court of San Diego County and from an order refusing a new trial.. W. A. Sloane, Judge.

The facts are stated in the opinion of the court.

Kirk & Kirk, E. E. Kirk, and Harry McKee, for Appellants.

U. S. Webb, Attorney-General, and George Beebe, Deputy Attorney-General, for Respondent.

ALLEN, P. J.—Appellants and others were, by the verdict of a jury, found guilty of a criminal conspiracy to violate an ordinance of the city of San Diego, which ordinance, containing an emergency clause, was enacted January 8, 1912, and by its terms it was made unlawful to hold or conduct public meetings or make public speeches within certain defined limits of said city. Such conspiracy was alleged and found to have been formed between January 8 and February 8, 1912, and the violation of said ordinance occurred on February 8, 1912. From the judgment entered upon such verdict, and from an order denying a new trial, defendants Kirk and McKee appeal.

No question is presented either as to the sufficiency of the indictment or the validity of the ordinance. There is, however, a general claim of appellants as to the insufficiency of the evidence to support the verdict. Neither counsel in their briefs have specified any portions of the record from an examination of which this general claim can be determined. It has been left for this court to cull from 1932 pages of typewritten transcript statements and matters in evidence affecting this general claim. This transcript contains arguments of counsel before the trial court and statements of the trial court upon innumerable questions, most of which are of no significance upon this appeal, imposing an unnecessary burden upon this court, as well as upon the taxpayers of San Diego County for transcribing the same. After carefully going over the entire record, of which if properly prepared less than one hundred pages would have been sufficient to illustrate the points raised, had a proper order been made as pro-

vided by statute for the preparation of such transcript, we are satisfied that there is found scattered therethrough competent evidence tending to establish a conspiracy between the various defendants named in the indictment to violate the ordinance in question, and that appellants were connected therewith, joined therein and violated the ordinance pursuant to such conspiracy.

Summarizing that portion which affects appellant Kirk, we find that on February 7th Kirk, representing himself to be the spokesman of a committee opposed to the enactment and enforcement of the ordinance, applied to the city authorities for a permit authorizing what he denominated the Free Speech League to make a parade through the streets of the city, the effect of which permission, if granted, would have been a permit to violate the ordinance. He especially asked that the parade be permitted to end at Fifth and E streets, which seems to be a prominent point within the restricted area. When asked why such point was suggested he replied: ''Because we understand that there will be public speaking at that point on the evening of February 8th.'' This permit was refused, but one was given to conduct a parade through other streets not within the restricted area, and Kirk at the time was asked to see to it that the ordinance was not violated. He said he would make no promise, that he was only one of a number, ''I will tell the committee what you say.'' This parade was so held on the 8th in violation of the permit and of the ordinance, and the parties participating therein, acting under the leadership of Kirk, who joined the parade and marched with the crowd, assembled at Fifth and E streets and openly and defiantly violated the ordinance. There can be no question but that a conspiracy had been formed to violate the ordinance in question, that Kirk had knowledge of that fact, and that having such knowledge he joined the conspirators in its violation. ''Any one who, after a conspiracy is formed, and who knows of its existence, joins therein, becomes as much a party thereto, from that time, as if he had originally conspired.'' (*United States* v. *Cassidy,* 67 Fed. 698.) It is true that Kirk's connection with the conspiracy is established only by circumstantial evidence. ''To establish a conspiracy it is not necessary that there should be an explicit or formal agreement for the unlawful scheme between the

parties, nor is it essential that direct or positive proof be made of an express agreement to do the act forbidden by law. In such cases it is frequently impossible to produce such proof, because conspiracies are not usually meditated and planned in the presence of witnesses not parties thereto, nor in the terms of express stipulations. Hence it is competent to prove the alleged conspiracy by circumstances. The understanding, combination, or agreement between the parties in a given case, to effect the unlawful purpose charged, must be proved, because without the corrupt agreement or understanding there is no conspiracy. But circumstantial evidence may be resorted to, to show the agreement or conspiracy." (*United States* v. *Nunnemacher,* 7 Biss. 111, 27 Fed. Cas., p. 197, [No. 15902].) "In order to establish a conspiracy, evidence must be produced from which a jury may reasonably infer the joint assent of the minds of two or more persons to the prosecution of the unlawful enterprise." (*Drake* v. *Stewart,* 76 Fed. 140, [22 C. C. A. 104].) Measured by these rules, the circumstantial evidence was such as to warrant the jury in determining that, whether Kirk was an original conspirator or not, he, with knowledge of the conspiracy, joined in the violation of the ordinance.

Considering the appeal of McKee, there is ample evidence showing his connection with the conspiracy. Before this parade, he busied himself in an effort to obtain pledges of parties that they would sign bonds required upon an arrest for violation of the ordinance, and thereafter joined in the parade mentioned, and, like Kirk, joined in the violation of the ordinance. These facts and circumstances were sufficient, if the jury believed them to have been established, to warrant a verdict of guilty against both appellants.

Upon the trial, the court permitted the state to show that appellants and others appeared before the city council, orally and in writing protesting and objecting to the passage of such ordinance, or any ordinance, the effect of which would be to restrict public speaking upon the public streets of the city; that threats were made by certain of the defendants that if such ordinance was adopted its enforcement would be resisted and the same would be violated by the protestants and others in sympathy with them upon the theory that such an ordinance would be unconstitutional and void as interfering with

and restricting freedom of speech guaranteed to the citizen. It is appellants' contention that at the time these protests, threats and acts were shown no ordinance was in force and that the same constituted no offense; that the conspiracy charged was between certain fixed dates anterior to which these protests, threats, etc., were made, and that under the rule the evidence in conspiracy must be limited to the acts and declarations done and made while the conspiracy was pending and in furtherance of the design. It must be conceded that the acts, statements, and representations of defendants, or those of them participating in the remonstrance, the effect and purpose of which only was to accentuate their opposition to the proposed legislation, were in no sense a violation of the law, and in so protesting and petitioning the city council to refrain from such legislation the defendants were acting clearly within their guaranteed rights. But where, in connection therewith, parties indulge in threats, either open or covert, as to future conduct in the event of a disregard of their petition or remonstrance, and subsequently participate in meetings called and held in furtherance of such threats, and one or more of their number carry such threats into execution, a different question is presented. The intent of such subsequent assemblage, the understanding and agreements arrived at—in other words, the fact of a conspiracy formed after the enactment of the law—are matters material and the establishment of which devolves upon the people. It is a familiar and established rule in this state that even evidence of another crime is pertinent and will not be excluded if it tends logically, naturally, and by reasonable inference to establish any fact material for the people to overcome. (*People* v. *Sanders,* 114 Cal. 230, [46 Pac. 153].) Evidence of a material fact which tends to show intent or motive, even though it tends to establish another crime, is admissible. (*People* v. *Craig,* 111 Cal. 468, [44 Pac. 186].) If a subsequent offense committed before the one under investigation may be shown for the purposes suggested, no reason is apparent why other acts and statements not amounting to a crime, but connected with the transaction and tending to show intent, may not also be shown. Were it, however, assumed that all of this evidence was inadmissible and constituted error upon the part of the trial court, nevertheless it appears

from the record that appellants, in connection with the testimony offered by them in defense of the charge, produced witnesses who were permitted to and who did go fully into and fully explain and state all of the matters and things so occurring prior to the passage of the ordinance, with reference to which objections had theretofore been made; the introduction of which testimony on the part of defendants had the effect to cure any error theretofore committed by the court in connection with the conduct and acts of the parties anterior to the passage of the ordinance. (*People* v. *O'Bryan,* 165 Cal. 55, [130 Pac. 1042].)   Nor is this rule changed because a portion of the evidence introduced by defendants was in conflict with that offered by the people.   The test to be applied as to the curative effect of the act of defendants testifying to the same transactions is not with reference to the confirmatory character, but as to whether or not the evidence so introduced by defendants covered the same field and the scope of which was identical with that offered by the people and objected to.   Nor, in our opinion, is the effect of the rule confined to the individual defendants who testified, but covers as well any evidence of the character offered on behalf of all of the defendants and affects equally all of the defendants as well as the defendant so testifying.

The next claimed error to which counsel for appellants direct the attention of the court is that involved in the denial of the motion to strike out the testimony of the witness De Ville.   The testimony of this witness had reference only to certain meetings held in the office of defendant Kirk at which various of the defendants were present, and at which meetings opposition to the proposed ordinance was discussed, as was the propriety of procuring buttons to be worn by the advocates of free speech, with the intent to influence the city council in opposition to the enactment of the ordinance; that these meetings were held prior to the passage of the ordinance. As we have before said, there is and can be no criticism of the parties who earnestly and honestly oppose proposed legislation taking all legitimate steps necessary in their opinion to prevent its enactment; and reading all of the evidence of De Ville we are unable to see anything connected therewith which could in any wise prejudice defendants' case.   It would have been better, would have shortened the record and obvi-

ated criticism had the court stricken out the De Ville testimony, but a reviewing court must of necessity assume the intelligence of a jury, and from which it must follow that the recitation of acts harmless in themselves could have no influence with the jury in arriving at a verdict. As said by our supreme court in the case of *People* v. *O'Bryan,* 165 Cal. 55, [130 Pac. 1042]: "Where error is shown, it is the duty of the court to examine the evidence and ascertain from such examination whether the error did or did not in fact work an injury. The mere fact of error does not make out a *prima facie* case for reversal which must be overcome by a clear showing that no injury could have resulted." Error is also claimed on account of the refusal of the court to strike out the evidence of one De Jarnette, with reference to which the same observations apply as in the case of the evidence of De Ville, and no prejudicial error is suggested by reason of the action of the court in denying the motion to strike out the testimony of this witness.

Upon the trial the court below permitted evidence of statements made after the commission of the overt act by one Bauer, a defendant charged in the indictment but by the verdict of the jury acquitted, the purport of which was that at a meeting called at the office of appellants and held after the enactment of the ordinance, in which appellants participated, it was agreed that a limited number should violate the law; that it was not the intention to have so many persons participate in the violation, but that "the thing had gotten away from them." It is contended that these statements of Bauer were a mere narrative of past events and not declarations of a conspiracy made during the progress of the conspiracy; that such statements made in the absence of the codefendants after the transaction is over are incompetent to prove the conspiracy against any one except the party making them. We are of opinion that were this question properly before us we should hold that such evidence was incompetent as affecting appellants, but the record shows this state of facts: Captain Sehon was upon the witness-stand, and after stating that he was present in the office of the chief of police during a conversation to which Bauer was a party, and when questioned by the district attorney as to the date thereof, counsel for defendants said: "I have no objection to that particular question";

thereupon the witness fixed the date as subsequent to February 8, 1912. Thereupon the district attorney proceeded to examine the witness in relation to the subject matter of the conversation, and the witness proceeded to narrate what was said by Bauer, in which were included the matters herein specified as incompetent evidence. No objection was urged by counsel for the defense, and no exception saved in relation thereto, other than an exception with reference to a ruling of the court regarding the right to recall the witness at a future date if deemed necessary, together with the general statement of counsel for the defense that the questions theretofore propounded to the witness had been leading in form. "A defendant may waive the objection that evidence is incompetent, and a failure to object to it on that ground is such waiver." (*People* v. *Smith*, 121 Cal. 357, [53 Pac. 803].) We cannot, therefore, consider the question of the incompetency of this evidence raised as it is for the first time upon this appeal.

Error is also claimed on account of the act of the court in admitting statements and admissions of Bauer made to the witness Bierman after the ordinance had been violated pursuant to the agreement. As to this evidence, it is somewhat difficult to determine from the record just what ruling was in fact made. The court, upon objection by counsel for defendants, had stricken from the record and the jury were told to disregard all statements of matters subsequent. Further along, however, the district attorney asked the following question: "Was anything said in that conversation by defendant Bauer as to the reason how or why he happened to be out on bail?" Counsel for the defense, without objecting, said: "There is no necessity for counsel asking anything further than, 'Did Bauer say anything else?'" Whereupon the district attorney adopted the question suggested and counsel for defendants excepted to the ruling of the court. In the first place, there seems to have been no formal objection to the question and no ruling thereon. The question was framed by the suggestion of counsel for the defense; thereupon the witness stated that Bauer said the reason why he was bailed out was because only those who were not leaders were sent to jail; that the leaders had been bailed out so that they could conduct the fight. A motion to strike out this answer was

made and denied and an exception entered. It seems clear to us that the answer, while incompetent as tending to prove anything connected with the case, was, nevertheless, harmless and no prejudice could result from the denial of the motion to strike out.

It is further claimed by appellants that such misconduct on the part of the district attorney is shown by the record as to warrant a reversal. It appears from the transcript that the district attorney during the progress of his argument to the jury said the private boast of appellant was that he was connected with "the malodorous defense of the McNamara brothers as of counsel." There is nothing in the evidence touching appellants' relation to the McNamara trial. It is claimed by appellants that such trial was of such character that those connected with it as counsel were, in the opinion of the general public, believed to be guilty of jury bribing. Again, further along in his argument the district attorney, obviously referring to one of the alleged conspirators, said: "Who is he? Where do we first hear of him? We find him representing the band of cut-throats who committed arson, murder and every sort of unmentionable and unpardonable crimes in your sister republic to the south." The record is silent as to any matters connected with troubles in Mexico. It must be said that the district attorney in his zeal seems to have forgotten the limitations upon legitimate argument imposed by law. Assuming as correct the inference claimed naturally following and arising from the unwarranted statement, and the probable effect thereof upon the minds of the jury conversant with the matters to which reference was so improperly made, nevertheless it is shown from the transcript that no objections were made at any time by defendants; that misconduct was not assigned nor remonstrance of any sort presented. While the record does show that earlier in the argument certain objections were made with reference to the district attorney's statement of the evidence of certain witnesses, the trial court in passing upon the matter and upon the necessity for interruptions and objections during the progress of the argument, said: "Of course, if there is anything very material, or a glaring statement, I think it is proper to call the attention of the court to it at the time, but the fact that the recollection of one counsel does not agree with another

as to what testimony has been introduced will not justify a review of the matter by the court or an interruption of counsel.'' After this admonition by the court, and the declaration that if a glaring misstatement were made objection should follow, we find no objection of any kind was made to these statements heretofore referred to and assigned as prejudicial error, although they occurred long after the court had called attention to the necessity of objection with reference to improper statements not involving mere recollection as to what witnesses had said. It is essential, in order that such misconduct be reviewed, that the act be called to the attention of the court below at the time, that an opportunity may be afforded to correct the abuse and if possible avoid error and a mistrial. It is settled law that a reviewing court will not entertain an objection of this kind first made therein. (*People* v. *Ah Fook,* 64 Cal. 381, [1 Pac. 347]; *People* v. *Lane,* 101 Cal. 513, [36 Pac. 16]; *People* v. *Kramer,* 117 Cal. 651, [49 Pac. 842]; *People* v. *Ruef,* 14 Cal. App. 618, [114 Pac. 48, 54].)

It is finally urged on behalf of defendant McKee that the conduct of the district attorney in his argument to the jury, wherein he called attention to the fact that certain matters involved had not been denied by McKee, was such prejudicial error as would warrant a reversal as to defendant McKee. As before stated, this conduct upon the part of the district attorney was such as should have brought upon him the censure of the trial court, but like other matters assigned as misconduct, no objection to it was made at the time by counsel for defendant. It is not, however, in every case that a reviewing court will restrict its examination to cases where objections are made. There are such flagrant violations of the rights of defendants that an admonition by the court, after objection, may not remove the prejudicial impression irresistibly made upon the minds of the jury by such unwarranted comment (*People* v. *Morris,* 3 Cal. App. 5, [84 Pac. 463]); and were the evidence as to McKee's guilt less convincing, this conduct upon the part of the district attorney would of itself, in the absence of section 4½ of article VI of the constitution of this state, be sufficient to warrant a reversal. But under said section 4½ reviewing courts are not permitted, even where matters prejudicial in their character appear in the record, to reverse such judgment, unless from the entire

record it appears that there has been a miscarriage of justice. We are not prepared to say, nor do we feel warranted in concluding, that a miscarriage of justice, in so far as defendant McKee is concerned, resulted from this unwarranted and flagrant action of the district attorney.

What is heretofore said, we think, covers all of the points raised, argued, or submitted, and a careful examination of the record satisfies us that no prejudicial error is shown warranting a reversal.

Judgment and order affirmed.

James, J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 28, 1913, and the following opinion then rendered thereon:

THE COURT.—Appellants' petition for a rehearing is denied. It is based upon a claim of inaccuracy of statement in the opinion with regard to the line of parade mentioned therein, as well as to the number of persons approached by McKee and asked to join him in furnishing bonds for the release pending trial of those who might be arrested for violating the ordinance. Were it even conceded that the concerted movement of the parties participating in the parade from the point specified in the permit for its termination to the point where the meeting was held, and at which appellants committed the unlawful acts, was not ? part of the parade, nevertheless the parade and defendants' connection therewith is not the vital question, nor the one on which the decision was based; on the contrary, the affirmation of the judgment depended upon the fact that evidence was introduced tending to show Kirk's statement from which it appeared that he had knowledge of the existence of the conspiracy and the intention on the part of those connected therewith to hold a meeting in defiance of the ordinance, and that he attended the same and with them violated it. The parade is of little consequence and was only mentioned because of the fact that the statement made by Kirk at the time when he applied for the permit to hold the parade tended to show knowledge of the existence of the alleged conspiracy. That prior to the violation of the

ordinance defendant McKee approached Captain Sehon and requested him to serve upon what he termed a bond committee and aid in securing bonds for the release of "people who were to be arrested for violating that ordinance," admits of no question. The fact that the evidence fails to show that he made such statement to other than the one person, or that Kirk was ignorant of the fact that McKee had made such statement at all, is immaterial. Knowledge of the conspiracy might be shown by independent evidence, whether affecting both defendants or each separately, the question being, Did both parties have knowledge of the conspiracy actually formed to which they afterward became parties through a violation of the law?

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 27, 1913, and the following opinion then rendered thereon:

THE COURT.—The application for a hearing in this court after decision by the district court of appeal of the second appellate district is denied. In denying the application we deem it proper to say that we are not prepared to concur in the following portion of the opinion: "Were it, however, assumed that all of this evidence was inadmissible and constituted error upon the part of the trial court, nevertheless it appears from the record that appellants, in connection with the testimony offered by them in defense of the charge, produced witnesses who were permitted to and who did go fully into and fully explain and state all of the matters and things so occurring prior to the passage of the ordinance, with reference to which objections had theretofore been made; the introduction of which testimony on the part of defendants had the effect to cure any error theretofore committed by the court in connection with the conduct and acts of the parties anterior to the passage of the ordinance. (*People* v. *O'Brien,* 165 Cal. 55, [130 Pac. 1042].) Nor is this rule changed because a portion of the evidence introduced by defendants was in conflict with that offered by the people. The test to be applied as to the curative effect of the act of defendants testifying to the same transactions is not with reference to the confirmatory

character, but as to whether or not the evidence so introduced by defendants covered the same field and the scope of which was identical with that offered by the people and objected to. Nor, in our opinion, is the effect of the rule confined to the individual defendants who testified, but covers as well any evidence of the character offered on behalf of all of the defendants and affects equally all of the defendants as well as the defendant so testifying.'' This portion of the opinion is, however, not necessary to the decision, as we consider that the views of the district court of appeal as to the admissibility of the evidence under consideration are correct.