[Crim. No. 1280.   First Appellate District, Division Two.—March 10, 1926.]

## THE PEOPLE, Respondent, v. ALBERTA F. EPHRAIM, Appellant.

[1] CRIMINAL LAW—EMBEZZLEMENT—CHARACTER OF APPROPRIATION—DEFENSE—EVIDENCE.—In a prosecution for embezzlement while acting as a clerk, agent, and servant of the complaining witness, where the defendant interposed the defense that she was entitled to retain the sum alleged to have been embezzled because of an indebtedness running to her, it was incumbent upon the defendant to prove that she had appropriated the money openly and avowedly and under a claim made in good faith, but it was not necessary for her to prove that her claim was a valid one upon which she might recover in law.

[2] ID.—APPROPRIATION BY AGENT—PROOF OF RELATIONSHIP.—In such prosecution, it was necessary for the prosecution to prove under the information that the money had been appropriated by the defendant while the relation of clerk, agent, or servant existed and also that the money was appropriated by the defendant for her own use.

[3] ID.—EXISTENCE OF CONFIDENTIAL RELATIONSHIP AT TIME OF EMBEZZLEMENT—EVIDENCE.—In such prosecution, in order to sustain the charge, under section 508 of the Penal Code, of a fraudulent appropriation by defendant of the money to her own use while in the capacity of an agent of the complaining witness, it was necessary for the prosecution to prove that the confidential relation continued up to and including the time of the alleged embezzlement.

---

2.   See 10 Cal. Jur. 264; 9 R. C. L. 1296.

[4] Id.—Embezzlement—Pleading—Information.—In such prosecution, where the information charged that the defendant received the money "on or about the twenty-ninth day of October," and that she did, "on the twenty-ninth day of October," fraudulently and feloniously appropriate it to her own use, in the absence of a special demurrer for indefiniteness, the information was sufficient.

[5] Id.—Confidential Relation—Fraudulent Appropriation—Time —Evidence.—Ordinarily it is not necessary for the prosecution to allege or prove the exact date upon which an offense is alleged to have been committed, but where a confidential relation is alleged to have arisen between the parties through which the money was lawfully received and the termination of that confidential relation is in doubt, it is necessary to prove the date of the alleged fraudulent appropriation in order to determine whether such appropriation occurred during the continuance of the confidential relation.

[6] Id.—Time of Appropriation—Evidence.—In this prosecution, there was a failure of proof that the money alleged to have been embezzled was fraudulently appropriated during the existence of a confidential relation between the parties, but, on the contrary, the only proof was that the appropriation was made openly and avowedly under a claim of right after the confidential relation had terminated.

[7] Id.—Agency—Demand—Intent.—Ordinarily it is not necessary to prove a demand for property alleged to have been fraudulently appropriated by an agent, particularly where other evidence clearly shows an appropriation by an employee of his employer's funds, with an intent to do so fraudulently and feloniously; but where the money is received by an agent for a special purpose and after the termination of the agency it is retained by him with the consent of the principal, a demand is necessary in order to establish the essential element of the crime—the fraudulent intent of the agent to appropriate it to his own use.

[8] Id.—Unfair Trial—Evidence—Appeal.—In this prosecution, after a review of the entire record, it is held that the defendant was not accorded a fair and impartial trial.

[9] Id.—Misconduct—Instructions.—Though ordinarily a request to instruct the jury to disregard acts of misconduct of the prosecuting officer is necessary where the error is such that its effect would be obviated by an instruction to the jury to disregard it, the rule is not applicable where the misconduct on the part of the

5.  See 14 Cal. Jur. 43.

7.  See 10 Cal. Jur. 265.

9.  See 8 Cal. Jur. 509; 2 R. C. L. 441.

state occurs throughout the examination of witnesses and in the arguments to the jury with such frequency that the jury is led to believe that the district attorney, as the sworn officer of the court, has in his possession facts so damaging to the defendant on trial that the defendant must insist on their being withheld.

(1) 20 C. J., p. 436, n. 68, p. 482, n. 34.   (2) 20 C. J., p. 429, n. 26, p. 482, n. 33, p. 483, n. 40.   (3) 20 C. J., p. 482, n. 33.   (4) 31 C. J., p. 683, n. 2.   (5) 20 C. J., p. 431, n. 42, p. 444, n. 30, p. 482, n. 33.   (6) 20 C. J., p. 486, n. 60.   (7) 20 C. J., p. 429, n. 31, p. 430, n. 32, 37 New.   (8) 16 C. J., p. 806, n. 4, 6, p. 886, n. 82, p. 891, n. 86, p. 892, n. 99, 5, p. 894, n. 36, p. 897, n. 93; 18 C. J., p. 1315, n. 77.   (9) 16 C. J., p. 916, n. 65; 17 C. J., p. 300, n. 41.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. Lincoln S. Church, Judge. Reversed.

The facts are stated in the opinion of the court.

Thos. T. Califro, John D. Harloe, Julian H. Biddle and Robert C. Young, for Appellant.

U. S. Webb, Attorney-General, and Chas. A. Wetmore, Jr., Deputy Attorney-General, for Respondent.

NOURSE, J.—The defendant was tried and convicted upon an information charging her with the crime of embezzlement. She has appealed from the judgment following the conviction and also from the orders denying her motion for a new trial and an arrest of judgment. The information charged that on or about the twenty-ninth day of October, 1924, by virtue of her employment as clerk, agent, and servant of J. Carero, the defendant came into possession of the sum of $275, the property of the said Carero, and that while in possession thereof on the said twenty-ninth day of October, 1924, she did unlawfully, fraudulently, and feloniously convert, embezzle, and appropriate the said property to her own use.

From the evidence in the record we find that on October 30, 1924, the defendant received from the complaining witness through J. E. King, the duly authorized agent of the complaining witness, the sum of $275 to be used by her, if possible, to arrange with the Panama Pacific Land Com-

pany for the dismissal of an action which that company had brought against the complaining witness and his wife to recover possession of certain premises on Durant Avenue, in the city of Oakland, which had been under process of purchase on an installment contract by the Careros and upon which contract they were several months in default. Upon the receipt of the money she went to the offices of the Panama Pacific Land Company in San Francisco, accompanied by Mrs. Carero, the wife of the complaining witness, and there endeavored to obtain a dismissal of the action and a restoration of the Careros in their contract. The company refused to grant either request, but agreed to accept the defendant as a purchaser under the contract. On their return from San Francisco the defendant and Mrs. Carero went to Fruitvale to look at a home which the defendant proposed that the Careros purchase in lieu of their Durant Avenue home. At this time the defendant proposed to Mrs. Carero that if they would purchase the Fruitvale home she would apply the sum of $275 on the first payment with the understanding that the Careros should assign to her their interest in the Durant Avenue home to enable the defendant to save some of the equity therein, the proceeds thereof to be divided between the defendant and the Careros. These negotiations were carried on between the defendant and the Careros for two or three days until, on about the second day of November, the complaining witness notified the defendant that he would not assign his contract in the Durant Avenue home, but would stand his loss and would not take up the purchase of the home in Fruitvale. The negotiations for the purchase of the Fruitvale home having been terminated and the relations between the parties having become strained, the defendant assigned to a third party a claim against the Careros in the sum of $298 and suit was immediately commenced to recover the same. Attachment was levied upon application of the assignee and the sum of $275 in the hands of the defendant was thereupon turned over to the court to await the determination of those proceedings. This all occurred about the sixth day of November, 1924. Thereafter, and on November 9th, the complaining witness assigned to his counsel all his right, title, and interest in the sum of $275 and this assignee appeared in the justice's court in the proceeding above

mentioned and filed what is known as a third party claim demanding the payment of the money over to him. On the following day, November 10th, the complaint which is the basis of this prosecution was filed and a warrant issued charging the defendant with the embezzlement of the sum mentioned. The civil proceedings mentioned were terminated when, after the arrest of the defendant on the charge of embezzlement, her assignee caused a dismissal of the action to be filed. The money in suit was thereafter received by counsel for the Careros in settlement of claims which he · asserted against them. Thereafter the defendant herein appeared before the justice's court and urged a motion to set aside the dismissal on the grounds that the entry thereof by her assignee was without her consent. But this motion was denied upon the ground that she was not a proper party in the proceeding.

The foregoing are really all the essential facts pertinent to the case at issue, but because of the peculiar method in which the case was tried it is necessary to go further and state the transactions in which the parties had been involved prior to the one in which the charge of embezzlement arose. The Careros owned and resided in a small home in San Leandro, and a brother of Mrs. Carero, one Joe King, owned the rear portion of the premises upon which the Careros resided. He persuaded them to exchange their right in the premises for a contract to purchase the premises located on Durant Avenue and for this purpose entered into a written agreement with them wherein they recited that the value of their San Leandro property was $2,300 and that the value of the Durant Avenue property was $6,500 and that the former should be taken in part payment for the latter, leaving a balance to be paid by them of $4,200 at the rate of $35 a month. As a part of the same transaction King, the agent, agreed to "throw in" his property adjoining the property of the Careros in San Leandro and had the Careros deed to him all their interest in their portion of the San Leandro property. As a part of the same written agreement the Careros covenanted to transfer this entire property free and clear of encumbrances, but when they learned some time later that the defendant was interested in the exchange they refused to perform this part of their agreement. The appellant was not known

to the Careros at any stage of the proceedings, the. complaining witness testifying "he never met her [the defendant] until this deal—until we were in the house. About two months after we were in the house the time I knew she was the one that made that trade, otherwise she would never have got the house." All these negotiations had been carried on by King, who was Mrs. Carero's brother and who was also the former husband of the defendant. He had previously been convicted of the crime of embezzlement and served a term in the state penitentiary. It is necessary to bear these facts in mind because of the repeated assertions of counsel for respondent, and of the district attorney who prosecuted the case in the trial court, that the defendant misrepresented various features of this exchange to the Careros or withheld certain information from them, and through her misrepresentations and fraud gained a profit thereby. The undisputed facts show that the Careros dealt with their own agent, King, and that they had never at any time disputed the fairness of the exchange, the complaining witness having testified on numerous occasions that the exchange was fair enough to him, that the full value of the San Leandro property was $2,300, and that he was satisfied with the value of $6,500 placed upon the Durant Avenue place.

As a part of this transaction the Careros made their deed of their portion of the San Leandro property to King, the Kinseys, who were the original purchasers of the Durant Avenue home, assigned their contract to the defendant, and she arranged with the Panama Pacific Land Company, the original vendor of the Durant Avenue place, to turn over this contract directly to the Careros. Thereafter King deeded to the defendant the two pieces of property in San Leandro, the one owned by the Careros and the one owned by himself, after having placed upon the entire tract a mortgage for $1,500 with which the Carero mortgage of $816 was liquidated and taxes and other liens were paid. Thereafter a second mortgage of $650 was placed against the property upon security given by the defendant and the promise that improvements on the premises would be made. For this second loan a bonus of $175 was paid. The sum of $1,975 which was thus received by the defendant on the security of the San Leandro property was ex-

pended in clearing the existing mortgages and liens upon the property, used to make the improvements required as a condition of the new mortgages and to pay the Kinseys for their contract upon the Durant Avenue property. All this required an outlay by the defendant in excess of the amount which she received in loans upon the San Leandro property.

Subsequent to the consummation of this exchange, the Careros delivered small sums of money to their agent King with the understanding that he should pay to the Panama Pacific Land Company the monthly installments of $35, supplementing what he had received from them from his own funds in lieu of board and lodging which he received from them. Some of these payments were made by King and others were neglected and finally notice was given to the Careros by the land company that they were in default and demand was made upon them for payment. When the Careros were three months in default upon their payments, the defendant voluntarily paid to the land company the sum of $223 covering installments, taxes, and other expenses. Two months later, the Careros were notified that they were again in default and borrowed money from their counsel to make payments. These conditions continued for almost the entire period of the occupancy of the premises by the Careros until, in October, 1924, they were notified that no further accommodations would be given them by the land company and suit was thereupon instituted to recover possession of the property. The matter was in this state when, on October 30th, the defendant, at the request of the Careros, went with Mrs. Carero to endeavor to arrange for a dismissal of the proceedings upon the payment of the sum of $275. They were notified, however, that the company would not accept that payment.

[1] To the charge in the information that she had embezzled the sum of $275 while acting as the clerk, agent, and servant of the complaining witness, the defendant interposed the defense that she was entitled to retain the sum because of the indebtedness running to her. This was the real issue before the jury and it was incumbent upon the appellant to prove that she had appropriated the money openly and avowedly and under a claim made in good faith, but it was not necessary for her to prove that her

claim was a valid one upon which she might recover in law. (Sec. 511, Pen. Code; *People* v. *Lapique,* 120 Cal. 25, 26 (52 Pac. 40].) **[2]** At the same time it was necessary for the prosecution to prove under this information that the money had been appropriated by the appellant while the relation of clerk, agent, or servant existed and also that the money was appropriated by the appellant for her own use.

An examination of the entire record discloses that she was not tried upon the issues so framed, but that she was compelled to defend the acts of her former husband, an ex-convict, who was the trusted agent and employee of the complaining witness, and that she was also compelled to defend the reputation of her present husband as well as her own reputation as a real estate broker in the county in which she was tried. As the trial progressed, the real issue forced upon the appellant by the state was whether she had, by false representations, obtained an unfair advantage over the complaining witness and his wife in the real estate transaction, which had occurred about one year prior to the time of the trial. Whatever may be the true facts regarding the exchange of these properties in January, 1924, the undisputed evidence shows that the complaining witness and his wife entered into the new premises with full knowledge of all the circumstances and with complete satisfaction in their part of the exchange. No complaint was made by them that the exchange was unfair to them until effort was made by the district attorney to put them in this position during the course of the trial. They stipulated in writing that the value of the property which they turned in was $2,300 and that the value of the property which they took on Durant Avenue was $6,500. The trouble came when their trusted agent, King, neglected to make the monthly payments and thus caused them to be in default in the installments upon their new home. It was, therefore, entirely outside the issues of this case as to what, if any, profit the appellant derived out of the San Leandro property after it had been transferred to her by King. Though the evidence is unmistakable that the loans which she had obtained upon this property were based on other security and that the failure of Carero to abide by his contract to transfer the property free from encumbrances cut her

profit on the entire transaction to less than what would
ordinarily be allowed to a real estate broker, nevertheless
the jury was frequently told by the district attorney in his
argument that she had obtained $2,300 in cash from this
property and that she was still indebted to the Careros in
that amount.

[3] Appellant was charged under section 508 of the
Penal Code with the fraudulent appropriation of the money
to her own use while in the capacity of an agent of the
complaining witness. To support the charge it was neces-
sary for the prosecution to prove that the confidential re-
lation continued up to and including the time of the al-
leged embezzlement. [4] The information charged that
the appellant received the money "on or about the twenty-
ninth day of October" and that she did, "on said twenty-
ninth day of October," fraudulently and feloniously ap-
propriate it to her own use. In the absence of a special
demurrer for indefiniteness, the information was sufficient.
(*People* v. *Schroeder*, 43 Cal. App. 623, 625 [185 Pac.
507]), but the attack is made that the evidence is insuffi-
cient to support the charge. [5] Ordinarily it is not
necessary for the prosecution to allege or prove the exact
date upon which an offense is alleged to have been com-
mitted, but there are, of course, exceptions to this rule.
Where, as is the case here, a confidential relation is alleged
to have arisen between the parties through which the money
was lawfully received and the termination of that confi-
dental relation is in doubt, it is necessary to prove the date
of the alleged fraudulent appropriation in order to deter-
mine whether such appropriation occurred during the con-
tinuance of the confidential relation. Though it is alleged
in the information that the money was received and appro-
priated on October 29th, the undisputed facts demonstrate
that this was not the case. It is conceded that the money
was not received until October 30th and the date of the
alleged misappropriation is left entirely to conjecture.
There is no dispute as to these facts: That the appellant
received the money on October 30th for a special purpose,
which she was unable to accomplish; that she returned to
the complaining witness and notified him of her unsuccesful
efforts; that the complaining witness then asked her for the
return of the money and that she persuaded him to allow

her to keep it for the time being pending negotiations for the purchase of another piece of property for the benefit of the complaining witness; that he assented to this arrangement and made no further demand upon her for the return of the money; that thereafter she was cited to appear before the district attorney, who demanded of her that she return the money before a certain date under penalty of prosecution for embezzlement. The prosecution failed to establish the time when this latter demand was made. The only testimony on this subject is that of the deputy district attorney as follows: "I think the first conversation was had some time possibly the first part of November, latter part of October, 1924. . . . Well, we had another conference, I believe; at any rate, it was continued then for a short time."

From the entire record it stands without contradiction that the original agency terminated on° the day on which it was created, October 30, 1924; that upon the termination of that agency, demand was made for the return of the money and that the complaining witness consented to appellant's request that she retain it for another purpose; that some time thereafter, probably November 2d, the complaining witness notified the appellant that he would not go through with the suggested purchase of another piece of property, but did not demand of her the return of the money; that thereafter and on November 6th, the appellant assigned her claim against the Careros in the sum of $298 for money claimed to have been paid for their benefit and her assignee commenced action against them and attached the sum of $275, which she held in her possession; that from that day forward the money which she was charged to have embezzled was in the possession of the court by virtue of the attachment which was issued in the civil suit; that when demand was finally made by the district attorney that she pay this money to Carero she insisted that the money was due her in satisfaction of her claim against the Careros and upon that ground refused to make restitution.

[6] There is, therefore, a failure of proof that the money was fraudulently appropriated during the existence of a confidential relation between the parties, but, on the contrary, the only proof is that the appropriation was made

openly and avowedly under a claim of right after the confidential relation had terminated.

It is argued that the prosecution failed to prove a sufficient demand for the return of the money before the information was filed. [7] Ordinarily it is not necessary to prove a demand for property alleged to have been fraudulently appropriated by an agent (*People* v. *Ward*, 134 Cal. 301, 304 [66 Pac. 372]), particularly "where other evidence clearly shows an appropriation by an employee of his employer's funds, with an intent to do so fraudulently and feloniously." (*People* v. *Royce*, 106 Cal. 173, 177 [39 Pac. 524].) But where money is received by an agent for a special purpose and after the termination of the agency it is retained by him with the consent of the principal, a demand is necessary in order to establish the essential element of the crime—the fraudulent intent of the agent to appropriate it to his own use. It is said in 10 Cal. Jur., page 265, "Where the time for the payment of the money is indefinite or has not expired, evidence of a demand therefor and of a refusal to return it or pay it over may be necessary to establish the fact of conversion. In such case the mere neglect to return in the absence of a demand, has never been admitted as proof of conversion."

The defense upon which the appellant relied was that she held the money openly and avowedly and in good faith in payment for moneys which she had advanced to the complaining witness (sec. 511, Pen. Code). In support of this issue it was shown that she had voluntarily advanced for the benefit of the complaining witness the sum of $223 in payment of installments and other charges upon their contract for the purchase of the Durant Avenue home and she endeavored to show that she had satisfied an attachment against an automobile owned by the complaining witness but was prevented from making this showing by the ruling of the trial judge on objection of the prosecution. This evidence was offered not for the purpose of showing that her claim against the Careros was tenable, as under the section of the Penal Code cited it was not necessary to prove that. It was offered merely to show that she held the money openly and avowedly under her claim against the Careros and that there was, therefore, *no intention* on her part to fraudulently appropriate the money to her own

use. Thus, so far as the evidence is concerned, the appellant held the money in her possession with the full consent of the owner until November 6th, when she deposited it with the officer of the law to await the determination of ownership in the civil suit. Before taking this action she had consulted with two deputies in the district attorney's office of the city and county of San Francisco and one deputy in the office of the attorney-general of the state, and was acting upon their advice. In this respect the case is on a line with *People* v. *Lapique,* 120 Cal. 25, 26 [52 Pac. 40]; *People* v. *Moss,* 113 App. Div. (N. Y.) 329–33–43 [99 N. Y. Supp. 138]; *People* v. *Moss,* 187 N. Y. 410, 425 [10 Ann. Cas. 309, 11 L. R. A. (N. S.) 528, 80 N. E. 383]; see, also, *Lindgren* v. *United States,* 260 Fed. 772, 777 [171 C. C. A. 498], and *State* v. *Littschke,* 27 Or. 189 [40 Pac. 167]. We are unable to conceive what better evidence of good faith could be asked than where a party, openly claiming a right to the money in dispute, deposits it with the duly constituted officers of the court to await the judicial determination of the legal title thereto through the regular mode of legal procedure in a civil suit.

[8] Aside from all the foregoing considerations the outstanding objection made by the appellant is that she was not accorded a fair and impartial trial. As said in *People* v. *Becker,* 210 N. Y. 274, 311 [104 N. E. 396]: "The fundamental demand of our law is that the accused shall have a fair trial, and that if that right has been infringed, not in respect to mere technicalities, but in substantial matters, and however undesignedly, he shall have another opportunity to meet his accuser and establish his innocence." In *People* v. *Wolff,* 183 N. Y. 464, 472 [76 N. E. 592, 594], "A fair trial is a legal trial, or one conducted in all material things in substantial conformity to law."

Throughout the presentation of the People's case the assistant district attorney by leading and grossly improper questions brought before the jury a large mass of irrelevant and incompetent testimony much of which was pure hearsay, having no possible relation to the issues at trial but all of which was highly prejudicial to the appellant. Many of these questions were asked in such a way that the witnesses were able to give their answers before counsel for appellant was able to object. Time and again the appellant's counsel

protested against this conduct and at his request the trial court would strike out the answer and hear his objection. Though in many cases the objection was sustained and the answer stricken from the record, the objectionable matter was always before the jury.  As we have heretofore pointed out the appellant was being tried on the charge of embezzling a certain sum of money during the early part of November, 1924.  The great bulk of the testimony, however, was directed to a real estate transaction in which she was engaged with the complaining witness and his wife and their agent, Joe King, during the month of January of the same year.  Over repeated objections of appellant's counsel these witnesses were permitted to testify to *ex parte* conversations had between the complaining witness and his wife and Joe King regarding matters which did not have the slightest connection with the issue at trial.  This hearsay testimony was brought in for the purpose of showing the bad reputation of the appellant growing out of her operations as a real estate broker as well as to show the bad reputation of King, with whom she was charged to have acted in conspiracy to defraud the complaining witness in the transaction of January, 1924.  Though some of this testimony was stricken out upon the objection of appellant, it was all employed by the assistant district attorney in his address to the jury, and we find in that address instances of statements of fact which are not supported by any evidence in the record but are founded solely upon the suspicions of the prosecutor.

Not only this, but the appellant was charged with all the crimes of her former husband, King, with the bad reputation of her present husband, and with her own bad reputation as an operator in the real estate market.  The Careros had not rescinded or repudiated the exchange; they testified in this case that their San Leandro property was worth $2,300 and that the exchange had been fair to them.  Until this case went to trial the appellant had not been charged with fraud or misrepresentation or unfair dealing in connection with that exchange.  Notwithstanding this the assistant district attorney, in his argument to the jury, and the state as well in its brief on file herein, charged the appellant as having conspired with Joe King to defraud the Careros in that transaction, with having misrepresented

to them material facts in relation to the properties exchanged, and having unlawfully withheld information in regard thereto. In addition to this, the district attorney charged Joe King with having forged the deed which the Careros made to him of their San Leandro property, with no evidence of any character to support the charge, and then accused the appellant with having wilfully suppressed the deed and refused to offer it in evidence. Again, with all the competent evidence directly contrary, the assistant district attorney deliberately stated to the jury that the appellant was then indebted to the Careros in the sum of $3,000. These statements must necessarily have impressed the jury to the prejudice of appellant, coming as they did from a sworn officer of the court. The jury was told in so many words that the appellant was a real estate shark who had defrauded the Careros out of their home in conspiracy with Joe King and then the prosecutor launched into an attack upon the criminal record of Joe King, and of the present husband of the appellant, who, he stated, was safely "put away."

On this appeal the respondent does not attempt to defend any of these charges of misconduct but rests solely on the ground that in each particular case the trial judge was not requested to instruct the jury to disregard them. [9] Though ordinarily such a request is necessary "where the error is such that its effect would be obviated by an instruction to the jury to disregard it" (*People* v. *Nakis,* 184 Cal. 105, 116 [193 Pac. 92, 96]), the rule is not applicable where the misconduct on the part of the state occurs throughout the examination of witnesses and in the arguments to the jury with such frequency that the jury is led to believe that the district attorney, as the sworn officer of the court, has in his possession facts so damaging to the defendant on trial that the defendant must insist on their being withheld. Such was the case before the supreme court in *People* v. *Anthony,* 185 Cal. 152, 159 [196 Pac. 47, 50], where the conviction of the defendant was reversed for misconduct of the district attorney in the examination of witnesses. In that case the supreme court say: "Ordinarily, the prompt sustaining of objections to improper questions, coupled with instructions to the jury to disregard the question, will cure an error of this

kind. But where the offense has been repeated in various forms and where the evidence is so evenly balanced and the district attorney after being warned by the court continues in his course, we must hold that the misconduct was so prejudicial as to entitle the defendant to a new trial.'' To the same effect are *People* v. *Kizer,* 22 Cal. App. 10, 20 [133 Pac. 516, 521, 134 Pac. 346], and *People* v. *Tufts,* 167 Cal. 266, 274 [139 Pac. 78]. In the case under review counsel for appellant objected to all the remarks of the assistant district attorney which he assigns as misconduct and objected to the improper examination of the witnesses until he found that his objections merely emphasized the error in the minds of the jury. We are not able to say from an examination of this record that there has not been a miscarriage of justice; on the other hand, it is patent that the appellant was not given a fair trial upon the charge laid in the information. (*People* v. *Glass,* 158 Cal. 650, 654 [112 Pac. 281]; *State* v. *Giudice,* 170 Iowa, 731, 751 [Ann. Cas. 1917C, 1160, 153 N. W. 336]; *People* v. *Fielding,* 158 N. Y. 542, 546 [70 Am. St. Rep. 495, 46 L. R. A. 641, 53 N. E. 497].)

Judgment and order reversed.

Sturtevant, J., and Langdon, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 25, 1926, and the following opinion then rendered thereon:

THE COURT.—The petition for a rehearing is denied. The petitioner is in error in assuming that the cause was reversed upon a conflict of evidence. The reason for the reversal was that the court was satisfied that from a review of the entire record the defendant had not been accorded a fair trial before the jury. As the cause was to go back for a new trial we discussed the evidence at some length merely for the purpose of pointing out some of the well-settled rules of law covering the elements of the crime which must be proved. As the Penal Code provides that an appropriation made openly and avowedly and under a claim in good faith is a sufficient defense to a charge of embezzlement, this was the real issue which the defendant

brought before the jury. The evidence was without conflict that the appropriation was made openly and avowedly and under an adverse claim. The question of good faith in the claim was clearly one for the jury to determine. It was because of the misconduct on the part of the prosecution that the defendant was prejudiced on the presentation of this issue. If we were in error in our statement of the evidence this was due to the failure of the state to point to the portions of the typewritten record which were claimed to support the statement of facts made in the brief. If we had reversed the judgment upon the ground that the evidence was insufficient to support it, then the matter of a conflict in the evidence would become an important factor. But this is not important when the evidence is merely referred to for other purposes.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 5, 1926.